**NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA., Plaintiff,**

**v.**

**George THOMAS, Defendant.**

**No. 86 CIV. 2272 (LLS).**

United States District Court, S.D. New York.

June 6, 1988.

Richard F. Russell, D'Amato & Lynch, New York City, for plaintiff Nat. Union Fire Ins. Co.

J. Portis Hicks, Drinker Biddle & Reath, New York City, David F. Walbert, Walbert & Hermann, Atlanta, Ga., for defendant George Thomas.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

This is one of over 200 cases filed in this court by plaintiff, National Union Fire In-surance Company of Pittsburgh, Pa., ("National Union"), an issuer of financial guarantee bonds, to enforce an indemnity agreement between itself and a limited partner in one of scores of tax shelter partnerships in various parts of the country. In these actions, plaintiff also seeks to enforce its rights as subrogee of promissory notes which it honored on behalf the defendant-investor. *National Union Fire Ins. Co. of Pittsburgh, Pa., v. Fred Allen Beasley,* slip op. 86 Civ. 8801 (LLS), 1987 WL 9186 (S.D.N.Y. April 1, 1987).

Plaintiff moves for leave to amend the complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, for summary judgment pursuant to Federal Rule 56, and to dismiss defendant's affirmative defenses pursuant to Federal Rule 12. Defendant, George Thomas, has cross-moved to stay or dismiss this action under Rule 12 F.R.C.P.[1].

### I.

On August 17, 1984 George Thomas purchased a limited partnership interest in the Barrick Jacksonville Limited Partnership ("Barrick Jacksonville"). That partnership was created to purchase and develop a specific parcel of property in Jacksonville, Florida. Dr. Thomas paid for his interest with $5,000 in cash and a $69,000 promissory note. The note was payable in five yearly installments of principal, with quarterly installments of interest.

Barrick Jacksonville engaged the services of National Union to back the limited partners' notes with a financial guarantee bond. On August 17, 1984 Dr. Thomas signed an indemnification and pledge agreement in favor of National Union which provided that Thomas would indemnify National Union if it was obliged to pay money on his note. On August 24, 1984 National Union issued the bond, Financial Guarantee Bond No. 117–69–69. On September 7, 1984 National Union amended the bond by endorsement to add Dr. Thom-

---

1. In actuality, defendant's notice of motion was filed first; however, due to some confusion between counsel and the court, the filings on his motion were not completed until after the plaintiff's motion was fully submitted.

as to the list of investors whose notes were covered by the bond.

The partnership never purchased the property which it was supposed to develop and Dr. Thomas elected to rescind his purchase of a partnership interest.[2] Leslie Barth, the general partner, executed a rescission letter dated February 5, 1985. Later that month Dr. Thomas received a refund of all amounts that he paid, plus interest. In a letter dated February 27, 1985 Mr. Barth informed Dr. Thomas that his "original promissory note will be forthcoming in due course." Dr. Thomas' note was never returned.

Meanwhile, in September 1984 Barrick Jacksonville had assigned defendant's note to Merban Americas Corporation ("Merban"). Installments became due and payable on the note on the first of October, 1984 and on the first of March, June and September, 1985. No payment was made by defendant of any installment. Without contacting Dr. Thomas, National Union made payments totalling $35,066.63 with respect to Dr. Thomas' note to the Bank of New York, agent for Merban, pursuant to the terms of the bond.[3]

In April 1985 National Union was informed by Steve Sion, an attorney with Barth and the Barrick Group that promoted the Barrick Jacksonville limited partnership, that the investors in Barrick Jacksonville had been offered the option of rescinding their partnership interests or of reinvesting in another limited partnership.

## II.

On January 17, 1986 National Union notified Dr. Thomas of the payments made on his behalf on the note. On February 14, 1986 Dr. Thomas, along with other similarly situated purchasers of interests in Barrick Jacksonville, brought an action in Georgia Superior Court entitled *Bernard Rosner, George Thomas, et al. v. Barth, National Union Fire Ins. Co. of Pittsburgh, Pa., et al.*, Case No. D–28916 (Fulton County, Georgia, Superior Court). On March 17, 1986 National Union commenced this action for reimbursement of amounts that it paid as the surety of the bond guaranteeing defendant's promissory note.[4]

The Georgia action, *inter alia,* charges National Union and the Bank of New York with fraud. The Georgia plaintiffs allege that these institutions had actual or imputed knowledge of the conversion of their notes prior to the transfer of the notes from the limited partnership and prior to any payments by National Union to the Bank of New York. The Georgia complaint further charges the defendants with violating the Securities Act of 1933 and the Georgia Securities Act.

The Georgia plaintiffs seek (1) to estop National Union from collecting on the notes or indemnity agreements at issue; (2) a declaratory judgment that the notes and indemnification agreements are void and that defendants, including National Union and any successors, may not recover on them; and (3) compensatory and punitive damages.

Discovery in the Georgia action is underway and the plaintiffs' motion in that action to compel discovery against National Union was granted. On February 14, 1986 the Georgia plaintiffs obtained a temporary restraining order, enjoining the Georgia defendants from filing any claim, action, complaint or lawsuit against the Georgia plain-

---

2. Mr. McDaniel of National Union states in an affidavit that at the time it issued the bond National Union was not aware that Barrick Jacksonville did not have title to the property which was to be developed.

3. The original complaint cites payments as totalling $22,044.36. National Union seeks to amend its complaint to cite the correct total of default payments made on behalf of defendant, $35,-066.63. Leave to amend the complaint is granted.

4. Except for the present motions, this case is assigned to Judge Stanton as are all cases filed by National Union against limited partners of Barrick Jacksonville. These cases are consolidated and include three actions brought by National Union against other plaintiffs in the Georgia state court action: *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Voyles,* 86 Civ. 2204 (LLS); *National Union Fire Ins. of Pittsburgh, Pa. v. Southside Investors,* 86 Civ. 2285 (LLS); and *National Union Fire Ins. Co. of Pittsburgh, Pa. v. DeLoach,* 86 Civ. 2271 (LLS).

tiffs, except by way of counterclaim in Georgia State Court. This order was dissolved on March 14, 1986. Cross-motions for summary judgment were denied by the Georgia court in December of 1987.

### III.

The complaint sets forth two bases for reimbursement: (1) National Union's status as subrogee of a holder in due course of a promissory note; and (2) National Union's rights pursuant to a signed indemnity agreement.

National Union asserts that Merban was a holder in due course of Dr. Thomas' note since it had no knowledge of fraud or wrongdoing involving the note. In this assertion National Union relies upon paragraph 7 of the bond which specifies that, to the extent that National Union makes payments under the bond in respect of a note, it will be subrogated to the rights of the holder of the note. National Union further asserts that it is entitled to indemnification based on the clear and explicit language of the indemnity agreement which provides for reimbursement for any payments made on Dr. Thomas' behalf.

Defendant's answer alleges, *inter alia,* that National Union was a party to fraud involving payments made on the note and denies any obligation to indemnify.

### IV.

There is a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236–1246, 47 L.Ed.2d 483 (1976) (citing *England v. Medical Examiners,* 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964)); *American Disposal Services, Inc. v. O'Brien,* 839 F.2d 84, 87 (2d Cir.1988). Notwithstanding this obligation, the Supreme Court has established several situations in which a court may abstain from adjudicating a case otherwise properly before it. Abstention is only appropriate if (1) it enables the court to "avoid deciding an issue of federal constitutional law by allowing a state court to resolve an issue of state law"; (2) the federal court in exercising its jurisdiction would be interfering with an ongoing state proceeding; (3) the case involves issues of state law of special interest to the state thus making deference to the state court appropriate; or (4) "exceptional circumstances" justify deference to a parallel state court action. *American Disposal Services, Inc.,* 839 F.2d at 87 and cases cited therein. Abstention in the present case would only be appropriate under the *Colorado River* "exceptional circumstances" doctrine.

In *Colorado River* and *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court outlined factors to be considered by a federal court considering whether to stay or dismiss an action in light of a parallel state court action. These factors include: (1) the assertion of jurisdiction over a *res* or property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law provides the substantive rule for the merits; and (6) the ability of the state court to protect the rights of the party seeking to invoke the federal court's jurisdiction. *Colorado River,* 424 U.S. at 818–819, 96 S.Ct. at 1246–1247; *Moses H. Cone Mem. Hosp.,* 460 U.S. at 15, 23, 26, 103 S.Ct. at 936, 941, 942; *Arkwright–Boston Mfrs. Mut. v. City of New York,* 762 F.2d 205, 210 (2d Cir.1985).

"[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem. Hosp.,* 460 U.S. at 16, 103 S.Ct. at 937. The burden of persuasion is on the party urging a stay or dismissal and the decision whether or not to abstain is a matter for the sound discretion of the district court. *Arkwright–Boston,* 762 F.2d at 210 (citing *Giardina v. Fontana,* 733 F.2d 1047, 1053 (2d Cir. 1984)).

The first factor, the assumption of jurisdiction over a *res* or property, is irrelevant here.

The second factor, inconvenience of the federal forum, does not weigh significantly either in favor of or against abstention. Defendant is located in Georgia, as are the other plaintiffs in the Georgia action. Furthermore, the limited partnership was formed there and plaintiff, although a Pennsylvania corporation with its principal place of business in New York, conducts business there.

The indemnity agreement contains a forum selection clause which permitted plaintiff to bring suit in this court. While such a permissive clause would not prohibit a change of venue pursuant to 28 U.S.C. § 1404(a), *Credit Alliance Corp. v. Crook*, 567 F.Supp. 1462, 1464–65 (S.D.N.Y.1983); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. DDJM Partnership*, slip. op. 86 Civ. 7637 (LLS), 1987 WL 9422 (S.D.N.Y. 1987), the question here is not whether the case should be transferred to a District Court in Georgia, but whether this court should exercise its jurisdiction at all. This factor does not weigh heavily in either parties' favor.

The third factor, the avoidance of piecemeal litigation, counsels for staying this action. In *Arkwright–Boston* the Second Circuit discussed the piecemeal litigation prong of the *Colorado River* doctrine in two related ways. First, the court recognized the potential waste of judicial resources and duplication of effort that would result from permitting the parties to maintain virtually identical suits in two forums. 762 F.2d at 211. Second, the court noted that the potential for issue preclusion could lead to " 'an unseemly and destructive race to see which forum can resolve the same issues first.' " *Id.* (quoting *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983)).

The present case and the Georgia action arise out of the same transaction: Dr. Thomas' promissory note issued in connection with the purchase of an interest in Barrick Jacksonville. The Georgia defendants are charged with fraud in connection with the formation of the limited partnership and fraudulently inducing the Georgia plaintiffs to invest in the partnership. In the Georgia action the investors claim that National Union knew of this fraud and helped other defendants perpetrate it. Thus the claims before the Georgia court involve issues common to affirmative defenses which are, or may be, asserted by Dr. Thomas in this case.[5]

A finding by the Georgia court that the note and indemnity agreement on which National Union now seeks to recover are void would have collateral estoppel effect on this case. Similarly, any ruling in this court prior to the outcome of the Georgia action might be binding on that court. Either proceeding will necessarily resolve questions of fact pertaining to Dr. Thomas' affirmative defenses and National Union's assertion of holder in due course status. These actions certainly qualify as virtually identical parallel actions which present a risk of a race to decision.

While this factor weighs in favor of abstention, its importance should not be overstated. In all cases where parallel actions overlap, this factor will favor abstention. Thus, reliance on this factor alone would undermine the notion that the *Colorado River* doctrine is limited to "exceptional circumstances." It is, moreover, apparent from the Georgia complaint that when plaintiffs, including Dr. Thomas, brought that action they knew that action by National Union in other forums was imminent.[6]

---

**5.** These affirmative defenses include fraud, breach of fiduciary duty, negligence, estoppel, waiver, and National Union's alleged violations of the Securities Act of 1933 and section 12(a) of the Georgia Securities Act. Several of these defenses, however, were not pleaded in Dr. Thomas' answer except that he "reserve[d] the right to amend his answer to assert as an af-

firmative defense in this action those matters which are alleged as affirmative claims in [the Georgia action]." Answer at ¶ 24.

**6.** Paragraph 45 of the Georgia complaint provides:

"Plaintiffs have been advised that defendants are on the verge of filing an action in a

The fourth factor, the order in which the courts obtained jurisdiction, weighs in favor of staying this action, although not heavily. In determining priority, the court does not look only at which plaintiff won the "race to the courthouse" but it also takes into account the progress made in each case. *Moses H. Cone Mem. Hosp.,* 460 U.S. at 21, 103 S.Ct. at 939; *Arkwright–Boston,* 762 F.2d at 211. While the Georgia action was filed thirty-one days before this action, discovery is being taken in both actions. Furthermore, motions for summary judgment have been made in both actions. Thus, the progress made in each court is substantially the same.

This case is thus distinguishable from *Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356 (2d Cir.1985), and *American Disposal Services, supra.* In both of those cases the Second Circuit affirmed the district courts' decisions to abstain in light of detailed state proceedings on the merits. *Telesco,* 765 F.2d at 363; *American Disposal Services,* 839 F.2d at 88.[7] By contrast, National Union brought this action as soon as the Georgia court lifted its order barring defendants from bringing a rival action. This complaint was filed before substantial consideration had been given to the merits of the state court action.

The fifth factor in the *Colorado River* analysis requires consideration of whether federal or state law will govern the action. This case was brought under the federal courts' diversity jurisdiction and National Union raises no federal law issues.[8] While "the presence of federal-law issues must always be a major consideration weighing" toward retention of a case by federal court, only in "rare circumstances [will] the presence of state-law issues … weigh in favor" of surrendering jurisdiction. *Moses*

*H. Cone Mem. Hosp.,* 460 U.S. at 26, 103 S.Ct. at 942. Indeed all diversity suits raise issues of state law, and thus the presence of such issues does not justify surrendering jurisdiction.

The issues of state law in the present case are not obscure and do not require the special expertise of the Georgia state court. *Giardina v. Fontana,* 733 F.2d 1047, 1051 (2d Cir.1984). Furthermore, the issues of state law are certainly not of special interest to the Georgia court. In fact, the choice of law provisions in the indemnity agreement and the note provide for construction in accordance with New York and Connecticut law, respectively. Thus the fifth factor of the *Colorado River* test does not tip the scales in favor of abstaining. *Arkwright–Boston,* 762 F.2d at 211.

The final factor to consider is the ability of the state court to protect National Union's rights. *Moses H. Cone Mem. Hosp.,* 460 U.S. at 26, 103 S.Ct. at 942. Should National Union choose to raise its claims in the Georgia proceeding, that court is empowered to decide the issue and grant the relief requested. Thus, this factor weighs in favor of staying this action.

 In balancing these factors, it is necessary to emphasize that there is a strong presumption against surrendering jurisdiction. Thus this court is not required "to find some substantial reason for the *exercise* of federal jurisdiction …; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice … to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem. Hosp.,* 460 U.S. at 25–26, 103 S.Ct. at 941–942 (emphasis in original). The first, second and fifth factors are either irrelevant or inapposite. The fourth and sixth factors weigh in favor of, but do

---

foreign jurisdiction against Investors on the notes and surety agreements."

**7.** In both of those cases the state court plaintiff brought the federal court action only after being denied the desired relief by the initially chosen forum. The present case, however, was not brought by a disappointed party to the Georgia action.

**8.** One of Dr. Thomas' affirmative defenses is based on the Securities Act of 1933 and thus there is an issue of federal law in this action. The presence of this issue, however, weighs only slightly against abstention since the same claim is present in the Georgia action and under the venue selection clause of the Securities Act, 15 U.S.C. § 77v(a), National Union may not remove that claim to federal court.

not mandate, abstention. Thus, only the desirability of avoiding piecemeal litigation counsels strongly in favor of abstention. As presented in this case, this concern does not establish the "extraordinary circumstances" necessary to justify abstention, and the application that this court abstain or dismiss is denied.

### V.

■ Having decided not to stay or dismiss the present action, it becomes necessary to rule on National Union's motion for summary judgment. To prevail on this motion, plaintiff must establish that there are no genuine issues of material fact to be resolved at trial. Federal Rule 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

National Union claims that it is entitled to recover either as the subrogee of a holder in due course of Dr. Thomas' note or based upon the indemnity agreement signed by Dr. Thomas. Either of these grounds, if clearly established, could serve as a basis for summary judgment.

Dr. Thomas raises several issues which, if proven at trial, could defeat National Union's claims. Specifically, Dr. Thomas asserts (1) that National Union improperly relied on an opinion letter written by Barth, Richheimer, Marvin–Smith, Friedman & Scholnick, P.C., the law firm of a general partner of Barrick Jacksonville; (2) that contrary to its usual practice National Union did not investigate whether Barrick–Jacksonville had title to the property it proposed to develop; (3) that for over a full year after Dr. Thomas' election to rescind National Union did not notify him of any "default"; (4) that National Union was aware of "defaults" on a majority of Barrick Jacksonville notes; (5) that in April of 1985 National Union was aware of rescission agreements between Barrick Jacksonville and the investors; and (6) that National Union was afraid that publicity about the problems with this limited part-

nership would have a negative effect on other transactions.

These facts suggest that National Union had notice of the fraud allegedly perpetrated on investors in this limited partnership. Even if they do not defeat National Union's claim to holder in due course status, these facts could establish an estoppel defense barring plaintiff from recovering with respect to the payments made on Dr. Thomas' behalf. Thus, summary judgment is inappropriate.[9]

### VI.

National Union has moved to strike Dr. Thomas' nine affirmative defenses. These defenses are: (1) failure to state a claim upon which relief can be granted; (2) lack of venue; (3) lack of personal jurisdiction; (4) lack of subject matter jurisdiction; (5) existence of a prior pending action; (6) reservation of right to amend answer; (7) failure to join an indispensable party; (8) waiver; and (9) estoppel.

In his responding papers, Dr. Thomas makes no effort to retain many of these defenses. Upon examining the record this motion is granted as to all affirmative defenses with the exception of the defenses of waiver and estoppel.[10]

### VII.

To summarize: (1) plaintiff's motion for leave to amend its complaint is granted; (2) defendant's motion to stay or dismiss this action is denied; (3) plaintiff's motion for summary judgment is denied; and (4) plaintiff's motion to strike defendant's affirmative defenses is granted except that defendant's waiver and estoppel defenses are not stricken.

SO ORDERED.

---

**9.** I note that the Georgia court denied cross-motions for summary judgment.

**10.** Clearly, Dr. Thomas is not barred from amending his answer pursuant to Rule 15 if he requests and is given leave to do so.