## In re IVAN F. BOESKY SECURITIES LITIGATION.

**Mark L. GLOSSER, Trustee for Pennsylvania Engineering Corp., Plaintiff,**

v.

**Victor POSNER, Defendant.**

**No. 89 Civ. 3789 (MP).**
**MDL No. 732.**

United States District Court,
S.D. New York.

June 1, 1994.

---

See also, 848 F.Supp. 1119.

Berger & Montague, Philadelphia, PA, for plaintiff Glosser.

Wolf Popper Ross Wolf & Jones, New York City, co–lead/liaison counsel in MDL Dkt. No. 732.

Kirkland & Ellis, New York City, for defendant Posner.

## MEMORANDUM AND ORDER

MILTON POLLACK, Senior District Judge:

This action was originally commenced in the United States District Court for the District of Delaware under the title of *Rubin v. Posner et al.,* and was transferred to this Court by order of the Judicial Panel on Multidistrict Litigation filed May 25, 1989, pursuant to 28 U.S.C. § 1407.

It is self-evident that this Court has exclusive jurisdiction over this suit during its pendency in the site of the multidistrict proceedings in the Southern District of New York. *See Manual for Complex Litigation, Second,* § 31.121 (1985) ("Once a transfer under § 1407 becomes effective—when the order granting the transfer is filed in the office of the clerk of the transferee court—the jurisdiction of the transferor court ceases and the transferee court has exclusive jurisdiction.") With due respect and apologies to the Bankruptcy Court for the Western District of Pennsylvania, that Court has no jurisdiction to impair or impede or dictate proceedings affecting the parties or attorneys who have been transferred to this Court while the proceedings herein are incomplete, ongoing and have not been remanded to that or any other Court by the Multidistrict Panel; the action was transferred here and remains here until expressly remanded. *See In re Baldwin–United Corp.,* 770 F.2d 328, 337 (2d Cir.1985) ("the jurisdiction of a multidistrict court is 'analogous to that of a court in an in rem action or in a school desegregation case, where it is intolerable to have conflicting orders from different courts'" (quoting 17 C. Wright & A. Miller & E. Cooper, *Federal Practice & Procedure,*

§ 4225)). *See also Glasstech, Inc. v. AB Kyro OY,* 769 F.2d 1574, 1576–77 (Fed.Cir. 1985) (holding that transferee court has exclusive jurisdiction following transfer and holding that "[t]he parties cannot confer jurisdiction by mutual consent.") A transferee court's inherent power cannot be circumscribed or usurped by impermissible actions taken by other federal courts, albeit that they may be bankruptcy courts.

■ The Pennsylvania Bankruptcy Court's orders of May 1994, made at the instance of the plaintiff in this suit, Mark L. Glosser, were undoubtedly the result of nondisclosure of the facts and the situation of this case in this District and with this Court, and therefore made inadvertently and without knowledge of the status of the case. Undoubtedly, the Bankruptcy Court was not informed by Glosser and those acting with him of the background to the case and of the exclusive authority of this Court in the premises or that this Multidistrict Court was in the midst of ongoing and uncompleted proceedings herein affecting this and other multidistrict proceedings as indicated more particularly hereafter. These delinquencies by Glosser were seemingly in flagrant contempt of this Court's jurisdiction, conferred by the Multidistrict Panel of the Judicial Conference, and control of this case and in disrespect of the Bankruptcy Court.

Plainly, as is indicated in the copy of the extraordinary annexed letter of Glosser to the attorneys for the plaintiff before this Court, said Glosser proceeded in secrecy before the Pennsylvania Court and in secrecy from this Court, failing to inform the Pennsylvania Bankruptcy Court of the status of this transferred action, and the authority of this Court in the premises. The orders so sought and obtained collide with, frustrate and would impair this Court's jurisdiction and authority in the ongoing and incomplete matters pending in this action and in other multidistrict matters related to and bearing hereon. As part of this Court's jurisdiction, this Court has before it the claim of Pennsylvania Engineering Corporation (of which Glosser is trustee) asserted against other defendants, including Drexel Burnham Lambert, Inc., for the same damages deriving from the identical securities transactions sued upon in this case.

Accordingly this Court directs the plaintiff herein, over whom this Court has personal jurisdiction, to immediately lay before the Bankruptcy Court for the Western District of Pennsylvania a copy of this memorandum and apply for the rescission of all orders obtained from that Court at the instance of Mark Glosser and any other, concerning any matter involved in this and any related claims during the pendency of this transferred action in this Court.

For the guidance of the Bankruptcy Court for the Western District of Pennsylvania, a brief summary of some salient matters affected by Glosser's improper actions follows.

On a motion on behalf of the plaintiff herein under Fed.R.Civ.P. 56 and based on findings of fact made by this Court in *S.E.C. v. Drexel Burnham Lambert,* 837 F.Supp. 587 (S.D.N.Y.1993), *aff'd* 16 F.3d 520 (2d Cir. 1994), this Court held that under the doctrine of collateral estoppel the plaintiff was entitled to partial summary judgment of liability and the case was then set for trial on the remaining issue of damages. On the verge of trial thereof, Posner offered to settle at a conference in Philadelphia at the offices of plaintiff's counsel herein. The negotiations continued in New York before the undersigned and agreement was reached on the amount of the settlement. Since the terms of the settlement included a demand that all outstanding matters pertaining to Posner be released by the plaintiff and vice versa, the parties were given a continuance of trial and the jury trial on the issue of damages originally demanded herein was waived.

The parties were directed to submit for this Court's consideration and approval the papers necessary to effectuate the contemplated result. Since there was complexity involved in the drafting, a period of approximately two weeks was envisioned before the parties would return to the Court and petition for this Court's approval and judgment to conclude this case and the subsidiary proceedings involved.

Unknown to this Court, however, Glosser in the interim undertook to assert that Ber-

ger & Montague, plaintiff's attorneys of record, were discharged, and then to appear before the Pennsylvania Bankruptcy Court requesting an order to take over the settlement sum with the purpose to present this Court with a purported discontinuance of this suit and an alleged agreement of settlement prepared by him or Posner's attorneys and signed by himself and Posner's attorneys; the latter were apparently told that the Pennsylvania Bankruptcy Court had taken jurisdiction of the settlement proceeds and had ordered them to be deposited in the office of the Clerk of Court for the Western District of Pennsylvania.

Glosser's attempt to discharge plaintiff's attorneys herein was without regard to this Court's requirements and in violation of General Rule 3(c), which states:

An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the court granted by order. Such an order may be granted only upon a showing by affidavit of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar.

The exact whereabouts of the $21 million settlement fund has not been disclosed although, at the hearing mentioned below, it was indicated to be in a so-called bonded account of Glosser with the Chemical Bank in New York, purportedly in compliance with the instruction of the Bankruptcy Court to deposit same with the Clerk of the Pennsylvania Court.

The actions of Glosser in secrecy from this Court having at that point come to light in part, this Court ordered a hearing for an explanation by Glosser's and Posner's attorneys. Upon telephone communication to the Bankruptcy Judge by this Court, it was assured that pending a hearing and action by this Court the Pennsylvania Court would hold matters in abeyance. Such a hearing was held at which it clearly appeared that the plaintiff Glosser had acted herein and in Pennsylvania in derogation of this Court's jurisdiction and authority in this multidistrict matter.

Posner's attorneys protested that their client had no choice but to comply with the Pennsylvania orders obtained by Glosser and that it was under those circumstances that they had delivered the moneys as directed and proceeded to sign the purported settlement papers and purported stipulation of discontinuance of this litigation.

Decision was reserved by this Court at the close of the hearing to give consideration to the irregularities which had occurred.

Suffice it to say, that this Court has no intention of entering into any sort of conflict with the Pennsylvania Bankruptcy Court and conceives that the first order of business is to require that the plaintiff Glosser, who is subject to the personal jurisdiction of this Court, shall take the laboring oar to set matters straight in the Pennsylvania Court and attorn to the multidistrict litigation jurisdiction of this Court so as to properly complete the settlement made in this Court on its record.

When that has been accomplished and when a proper judgment is entered herein by this Court, then a suggestion can be made by this Court to the Multidistrict Panel to transfer any settlement recovery with due regard for any charging lien of plaintiff's attorneys asserted herein.

So Ordered.

(ANNEX)

Mark L. Glosser
Attorney–At–Law
Suite 1331 Gulf Tower
Pittsburgh, PA 15219
· (412) 281–6555

_____

May 15, 1994

*VIA FAX (215) 875–4604*

David Berger
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

Re: *Mark L. Glosser, Trustee for Pennsylvania Engineering Corp. v. Victor Posner*, 89 Civ. 3789 (MP) (S.D.N.Y.)

Dear David:

On Friday morning, May 13, 1994, I executed and delivered the settlement agreement and supporting documentation regarding the above captioned action. After delivering the executed documents, I left my office for the remainder of the day. Upon returning home Friday evening, I found several messages from my office indicating that you were trying to reach me. Although I did not know (Friday evening) what you wished to speak to me about, I was sure it was a continuation of our ongoing discussion concerning what court had jurisdiction over the estate of PEC and the settlement proceeds.

I did not give you advance notice of my intention to execute the settlement agreements as I know you disagree my proposed course of action. I did not wish to put you in a bind with Judge Pollack by giving you advance notice of my intentions nor did I wish to engage in additional discussion with you as my mind was made up. It was my intention to call and/or write you Monday morning advising you of this fact.

On Sunday morning, I received a phone call (at home) from Stan Siegel requesting, on your behalf, that I not execute the settlement agreements and that I call you at home to discuss the matter further. Stanley also mentioned several other matters which I will address below.

I can not (and will not) undo the execution and delivery of the settlement agreement. The settlement agreement reflects the binding contract between Posner and myself which was placed on the record before Judge Pollack. The settlement is concluded and I will not permit Victor Posner nor anyone else to undo it. I would also point out that the terms of the settlement as read into the record before Judge Pollack (and approved by Judge Pollack) called for the settlement proceeds to be administered by the United States District Court for the Western District of Pennsylvania and not by The United States District Court for the Southern District of New York.

Stanley also mentioned (although I cut him off) the possibility of your visiting Chief Judge Ziegler or of having Judge Ziegler call Judge Pollack. I do not agree or consent to either of these courses of action and I instruct you, as my attorney, *not* to undertake either course of action or in any other way attempt to communicate (except with my express written permission) with Judge Ziegler.

My reasons for these instructions are several. First, I intend to have the debtors' estates and the funds contained therein administered in *strict* compliance with the Bankruptcy Code and the Rules of Bankruptcy Procedure. The only reason to speak to Judge Ziegler is to receive permission to attempt to circumvent, in some fashion, the Bankruptcy Code by giving Judge Pollack control over estate assets when the Code does not permit this.

Secondly, I believe that your duty as my attorney is coming into conflict with the duty that you owe to your firm as to other matters you have before Judge Pollack. I do not believe that you can appear before Judge Ziegler and advocate my interests as your client (i.e., advocate strict compliance with the Bankruptcy Code and control over estate assets) while at the same time seek to urge the Court to take an action contrary to my wishes as your client. It is my opinion that the course of action you wish Judge Ziegler to take is for your, and/or Judge Pollack's benefit, and not my (i.e., your client's) benefit.

In addition (as Stanley will tell you), Judge Ziegler made it clear to both of us that he *will not* call other judges concerning jurisdictional issues pretaining to cases which are before him. Conversely, Judge Ziegler indicated to Stanley and I that he does not expect other judges to call him regarding these same issues. I do not intend to ask Judge Ziegler to do something he has expressly stated his intention not to do.

Given the events since the settlement with Victor Posner was reached, I have come to the reluctant conclusion that your firm can

no longer represent me in the above captioned matter. It is with regret that I am notifying you that you no longer have any authority to act on my behalf in the above referenced matter and that your representation of me in this matter is terminated of now (i.e., Sunday, May 15, 1994).

I appreciate the work you have done on my behalf and I thank you for it. I do not believe any other law firm in the country could have attained better results. I regret that matters outside of our control have lead to my terminating your services as to the above referenced case. When and if I require the assistance of counsel in this case, I will retain new counsel and request that you cooperate with them.

Finally, as I have previously told you, Judge Ziegler advised Stanley and myself that he has no objection to Judge Pollack reviewing and passing on your fees as to the above referenced matter. I will obtain an order to this effect at the same time Judge Ziegler (after notice and hearing as required by the Bankruptcy Code) approves the settlement with Victor Posner. I anticipate that the hearing on my Motion to Approve the Settlement Agreement will be conducted by Judge Ziegler in approximately thirty (30) days.

Please excuse any typing or form errors in this letter as I am typing it and faxing it to you from my home computer as of this date, i.e., Sunday, May 15, 1994. I will not be available tomorrow. However, I will attempt to reach you by phone today or later in the week to personally convey my thoughts to you.

Thank you again for your able representation. I hope you understand my position.

Very truly yours,

/s/Mark L. Glosser

Mark L. Glosser