**ASBESTOS LITIGATION**

**This Document Relates to: Greff, Moore, McPadden, Strafford, Ciletti, Conway.**

Nos. 87 Civ. 8085(RWS), 88 Civ. 4214(RWS), 90 Civ. 3473(RWS), 92 Civ. 3900(RWS), 92 Civ. 3901(RWS), 94 Civ. 7177(RWS).

United States District Court, S.D. New York.

April 24, 1997.

Levy, Phillips & Konigsberg, New York City (Moshe Maimon, of counsel), for Plaintiffs.

Gregg J. Borri, New York City, for Defendant Raymark Industries.

## OPINION

SWEET, District Judge.

Defendant Raymark Industries, Inc. ("Raymark") has moved to dismiss, stay or transfer four of six asbestos actions consolidated for trial before this Court.

For the reasons set forth below this motion is denied.

### Prior Proceedings

This action concerns five of six consolidated claims from the so-called "asbestos cases" that have been supervised by the Multi–District Litigation Panel for discovery and pretrial purposes.

Each of these actions was originally filed in the Southern District of New York and subsequently transferred by order of the Multi–District Litigation Panel to the Honorable Charles Weiner of the Eastern District of Pennsylvania. On April 28, 1995, the cases were transferred back to this Court for trial purposes on the basis of hardship arising out of trial delay. The actions were consolidated by this Court on March 28, 1997.

Raymark's instant motion to dismiss four of the actions was filed on February 26, 1997. Argument was heard on March 26, 1997, at which time the motion was considered fully submitted.

### Facts

The consolidated claims consist of six actions: *Greff,* 87 Civ. 8085; *Moore,* 88 Civ. 4214; *McPadden,* 90 Civ. 3473; *Strafford,* 92 Civ. 3900; *Ciletti,* 92 Civ. 3901; and *Conway,* 93 Civ. 7177. Raymark's motion to dismiss concerns only *McPadden, Ciletti,* and *Strafford* (collectively "Plaintiffs").[1] Raymark claims that it has already been dismissed by order of Judge Weiner from *Greff* and *Moore.*

Four of the five plaintiffs bring claims arising from their contracting mesothelioma, a cancer caused by exposure to asbestos.

Richard Conway ("Conway") worked as a sailor in the United States Navy between 1955 and 1958 and claims to have been exposed to asbestos from pipe covering and steam pipe insulation. Martin McPadden ("McPadden") worked as a mechanic and steamfitter between 1957 and 1973 on several naval ships and in several power-generating stations. Joseph Greff ("Greff") worked as a welder at a shipyard between 1941 and 1984. Alfred Ciletti ("Ciletti") worked as a sheetmetal worker at various shipyards between 1940 and 1973.

Walter Strafford ("Strafford"), a smoker, claims exposure to asbestos in 1962 from packing materials and gaskets, while working in a sheet metal shop dismantling and refurbishing valves allegedly containing asbestos packing. Strafford's claim arises out of his contracting mesothelioma and lung cancer.

Richard Moore's ("Moore") claim arises out of his contracting lung cancer allegedly as a result of exposure to asbestos during his work as a mason tenderer and laborer at numerous construction sites in New York City between 1959 and 1986.

### Discussion

Raymark moves for dismissal against all Plaintiffs for lack of service, and on grounds that amendment of Plaintiffs' complaints to include Raymark was ineffective. Raymark also argues that the claims by Ciletti and Strafford should be dismissed or stayed on grounds that both plaintiffs have asbestos claims pending in New York State Supreme Court. Finally, Raymark asserts that Judge Weiner previously dismissed Raymark from the actions by Greff and Moore.

### 1. Dismissal for Lack of Service

■ Raymark claims that Plaintiffs failed to effect proper service pursuant to Section 307 of the New York Business Corporation Law, entitled "Service of process upon unauthorized foreign corporation". Raymark alleges that Plaintiffs' service was defective in two ways.

---

1. Raymark's motion also included grounds for dismissal against plaintiff Conway. On April 13, 1997, the Court so ordered a stipulation and order of dismissal between Conway and Raymark without prejudice or cost.

First, Raymark alleges that Plaintiffs' affidavits of service to the Defendant failed to provide notice of service upon the Secretary of State. Section 307(b) requires that, after service upon the Secretary of State, a notice of service upon the Secretary of State, together with a copy of the process, be served on a defendant either personally or by registered mail, return receipt requested.[2]

Second, Raymark alleges that Plaintiffs failed to file an affidavit of compliance with the Secretary of State after serving Raymark. Section 307(c) requires that an affidavit of compliance be filed with the clerk of the court. Service is not complete until ten days after such papers are filed.[3]

Plaintiffs have fully refuted Raymark's allegations of ineffective service by demonstrating full compliance with § 307. Copies of papers served on Raymark include notice of service on the Secretary of State. Affidavit in Opposition to Defendant Raymark Industries' Memorandum of Law to Dismiss, Exhibit C. Plaintiffs also provide copies of two separate affidavits of compliance filed with the clerk of the court after each attempt to serve Raymark. *Id.* Exhibits B and C.

Plaintiffs offer a fully detailed account of their repeated and ultimately successful attempts to serve Raymark according to the dictates of § 307. In affidavits of compliance filed with the clerk of the court on February 19, 1997, Plaintiffs depose that they served the Secretary of State with a Notice of Amendment and Amended Summons and Complaint on December 10, 1996. Plaintiffs then sent a copy of the Notice of Amendment, Amended Summons and Complaint and a copy of the Affidavit of Service on the Secretary of State via registered mail, return receipt requested, to Raymark Industries on December 11, 1996. The original envelope addressed to Raymark was returned to Plaintiffs' counsel's office marked "unclaimed".

The Post Office provided a forwarding address for Raymark on the returned envelope. Plaintiffs then repeated service to this forwarding address on January 7, 1997. Again the envelope was returned marked "unclaimed."

In a second affidavit of compliance, filed with the clerk of the court on March 13, 1997, Plaintiffs state that yet another mailing to Raymark was made to a third address, on

---

**2.** Section 307(b) provides in pertinent part:

"... Such service [upon the Secretary of State] shall be sufficient if notice thereof and a copy of process are: (1) Delivered personally without this state to such foreign corporation by a person and in the manner authorized to serve process by law of the jurisdiction in which service is made, or (2) sent by or on behalf of the plaintiff to such foreign corporation by registered mail with return receipt requested, at the post office address specified for the purpose of mailing process, on file in the department of the state, or with any official or body performing the equivalent function, in the jurisdiction of its incorporation, or if no such address is there specified, to its registered or other office there specified, or if no such office is there specified, to the last address of such foreign corporation known to the plaintiff." N.Y. Bus. Corp. § 307(b) (McKinney 1986).

**3.** Section 307(c) provides in pertinent part:

"1. Where service of a copy of process was effected by personal service, proof of service shall be by affidavit of compliance with this section filed, together with the process, within thirty days after such service, with the clerk of the court in which the action or special proceeding is pending. Service of process shall be complete ten days after such papers are filed with the clerk of the court.

2. Where service of a copy of process was effected by mailing in accordance with this section, proof of service shall be by affidavit of compliance with this section, filed, together with the process, within thirty days after receipt of the return receipt signed by the foreign corporation, or other official proof of delivery or of the original envelope mailed. If a copy of the process is mailed in accordance with this section, there shall be filed with the affidavit of compliance either the return receipt signed by such foreign corporation or other official proof of delivery or, if acceptance was refused by it, the original envelope with a notation by the postal authorities that acceptance was refused. If acceptance was refused, a copy of the notice and process together with notice of the mailing by registered mail and refusal to accept shall be promptly sent to such foreign corporation at the same address by ordinary mail and the affidavit of compliance shall so state. Service of process shall be complete ten days after such papers are filed with the clerk of the court. The refusal to accept delivery of the registered mail or to sign the return receipt shall not affect the validity of the service and such foreign corporation refusing to accept such registered mail shall be charged with knowledge of the contents thereof." N.Y. Bus. Corp. § 307(c) (McKinney 1986).

February 13, 1997. On February 18, 1997, the return receipt cards for the mailing was returned, acknowledging service of the Notice of Amendment, Amended Summons, Amended Complaint and Affidavit of Service on Raymark.

Plaintiffs' service of Raymark was thus complete on March 23, 1997, ten days after filing the last affidavit of compliance on March 13, 1997. Raymark's motion to dismiss for defective service is therefore denied.

### 2. Dismissal for Ineffective Amendment of the Complaint

■ Raymark argues that the amendment adding Raymark as a defendant was unauthorized because Plaintiffs failed to obtain permission of the Court, as required by Fed. R.Civ.P. 15(a).

Plaintiffs counter that they complied with the method for amending asbestos complaints in the Southern District of New York as set forth in the Southern and Eastern District Asbestos Litigation Case Management Order No. 1, Part VI(E), dated October 5, 1987, ("Case Management Order").

The Case Management Order explicitly removes the requirement that plaintiffs seek leave of the court to amend their complaints to add additional defendants:

> Any plaintiff may, without further leave of the Court, which is hereby granted, amend his or her complaint to add claims based on survivorship, death of the original plaintiff, loss of consortium or society, to sever any joined claims, or to add additional defendants.

Case Management Order, Part VI(E) at 10.

■ Raymark argues that the Case Management Order was superseded by the MDL Pretrial Order No. 1, issued by Judge Weiner of the Eastern District of Pennsylvania on September 18, 1991, ("Pretrial Order"). However, Judge Weiner's Pretrial Order does not control the conduct of pretrial proceedings in a multidistrict litigation which has been transferred back to the Eastern and Southern Districts of New York. Once a case has been transferred from one district to another, the previous court no longer retains authority to issue orders in the case. *In re Ivan F. Boesky Securities Litigation,* 170 B.R. 61, 62–63 (S.D.N.Y.1994) (Bankruptcy Court of Western District of Pennsylvania has no jurisdiction to "dictate proceedings affecting the parties or attorneys" after transfer to Southern District of New York); *Glasstech Inc. v. A.B. Kyro Oy,* 769 F.2d 1574, 1576 (Fed.Cir.1985); *In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation,* 664 F.2d 114, 118 (6th Cir.1981); *General Electric Co. v. Byrne,* 611 F.2d 670, 673 (7th Cir.1979). Judge Weiner's Pretrial Order clearly cannot "supersede" an order issued by the court holding jurisdiction in the Eastern and Southern Districts of New York.[4]

■ Judge Sifton's Case Management Order governs pretrial proceedings in cases transferred back to this court and has granted Plaintiffs leave to add defendants to their complaint. The court holding jurisdiction is empowered to conduct all pretrial proceedings by 28 U.S.C. § 1407(b).[5] This power includes amendment of a complaint to add parties or claims. *In re Prudential Securities Incorporated Limited Partnerships Litigation,* 158 F.R.D. 562, 568–69 (S.D.N.Y. 1994); *In re Equity Funding Corp. of America Securities Litigation,* 416 F.Supp. 161, 177 (C.D.Cal.1976). In *Prudential,* the court holding jurisdiction issued an order which authorized the plaintiffs to serve a proposed consolidated complaint on "any additional defendants (who are not currently parties in any of the Consolidated Actions.)" *Id.* at 564. Certain newly named defendants objected, arguing that the court did not have the power to permit the amendment without considering certain factors. The court rejected this argument: " ... [§ 1407] does not

---

4. Moreover, according to Raymark's argument, Judge Weiner's Order would impose the rules of the Eastern District of Pennsylvania upon proceedings in a court of the Southern District of New York. Obviously this argument falls afoul of fundamental jurisdictional law.

5. Section 1407 states in relevant part:
 "Such coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned by the judicial panel on multidistrict litigation." 28 U.S.C. § 1407(b) (West 1993).

affect the power of the transferee court to fashion pretrial procedures in accordance with the Federal Rules of Civil Procedure once transfer is complete." *Id.* at 569 (quoting *In re Equity Funding Corp.*, 416 F.Supp. at 177). Like the order in *Prudential*, the Case Management Order in the instant case permits the Plaintiffs' addition of Raymark as a defendant without further leave of the Court.

Raymark also argues that the Case Management Order applies only to cases before Judge Sifton, the signator. However, it is abundantly clear that the Order is meant to control all joint Eastern and Southern District asbestos litigation. First, the Order is so labeled. Second, Part A of the Order states that "The original of this Order shall be filed by the Clerk in the [New York Asbestos Litigation] Master File herein established, and a copy shall be deemed to be part of the record of each coordinated action." *Id.*, Part A at 3.

For the reasons set forth above, Raymark's motion to dismiss the complaint on grounds of defective amendment is denied.

### 3. *Abstention or Stay On Grounds of Pending State Court Action*

Raymark moves for an order of dismissal or stay of the actions by Plaintiffs Ciletti and Strafford based on the doctrine of abstention. Ciletti and Strafford currently have asbestos claims pending before New York State Court. Raymark argues that these pending state court actions meet the standards for federal abstention established by *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483, *reh'g denied*, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976) and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■■■ There is a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483.

As a general rule, federal courts are obliged to adjudicate claims that are properly presented and that are within their subject matter jurisdiction ... the existence of concurrent federal and state proceedings regarding the same subject matter is not by itself sufficient to justify dismissal under Colorado River. Rather the court must consider a number of factors before it may exercise its discretionary power.

*American Disposal Services, Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir.1988). These factors are: (1) the assumption by either the state or federal court of jurisdiction over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law provides the rule of decision; (6) whether the state court proceeding will adequately protect the rights of the party seeking to avail itself of federal court jurisdiction. *Id.*; *King v. Hahn*, 885 F.Supp. 95, 98 (S.D.N.Y. 1995); *National Union Fire Insurance Co. v. Thomas*, 713 F.Supp. 62, 65. In order to prevail, the moving party must carry a heavy burden. *King*, 885 F.Supp. at 97. "Only the clearest of justifications will warrant dismissal." *Id.* (quoting *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247.)

■■■ According to Plaintiffs, abstention analysis is entirely inapposite because Raymark has not in fact been joined as defendant in the state court action. Raymark asserts that Raymark has not been joined only because Plaintiffs' counsel has chosen not to file the necessary papers. This dispute does not affect the outcome. Even if Raymark were joined to the state action, abstention would not be appropriate.

The first and second factors, jurisdiction over a res or property, and inconvenience of the federal forum, are not applicable here. Raymark argues that the third factor, desirability of avoiding piecemeal litigation, militates for abstention. Raymark asserts that the federal and state actions contain issues which are inextricably linked. Moreover the state action is more comprehensive, because it involves defendants not present in the federal action. There is therefore some risk of inconsistent result; the federal court could reach a determination of common issues

which would not bind parties present only in the state court action. Raymark is correct that this factor weighs towards abstention. However:

> . . . any case involving parallel proceedings presents a risk of duplicative litigation or a rush to judgment, the existence of those risks can weigh only modestly in favor of dismissal; otherwise dismissals pursuant to Colorado River would be the rule, not the exception, in cases involving parallel proceedings in state and federal court.

*King,* 885 F.Supp. at 98; *National Union,* 713 F.Supp. at 66. A risk of inconsistent results alone will not outweigh the heavy presumption against abstention. This is particularly true where Raymark has not in fact been joined to the state action, and may never be if the federal court retains jurisdiction.

The fourth factor, the order in which jurisdiction was obtained and the progress of each action, weighs towards retention of the case in federal court. The federal action is on the eve of trial, and extensive discovery has already taken place. The state action will not take place until 1998 at the earliest, if not later. Raymark argues that the less imminent state trial date actually weighs in favor of abstention, because Raymark has not yet taken discovery in the federal action and proceeding apace to trial would prejudice Raymark's preparation of its defense. This argument is rendered less persuasive by Raymark's continued failure to accept the Court's invitation to list what discovery would be necessary for its defense.

 The fifth factor, whether state or federal law supplies the rule of decision, includes consideration of whether the state law issues raised are so obscure or of such special interest that they merit state court determination. *National Union,* 713 F.Supp. at 67 (citing *Giardina v. Fontana,* 733 F.2d 1047, 1051 (2d Cir.1984)). This factor weighs against abstention. While state law will determine the claims, this fact does not warrant abstention. "[O]nly in rare circumstances will the presence of state-law issues weigh in favor of surrendering jurisdiction." *Id.,* (quoting *Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. at 942). In addition, the state law

issues in asbestos claims are not obscure and have been adjudicated in this court. *See In re New York Asbestos Litigation,* 155 F.R.D. 61 (*S.D.N.Y.* 1994); *In re New York Asbestos Litigation,* 847 F.Supp. 1086 (S.D.N.Y.1994); *In re New York Asbestos Litigation,* 149 F.R.D. 490 (S.D.N.Y.1993); *In re Joint Eastern & Southern District Asbestos Litigation,* 827 F.Supp. 1014 (*S.D.N.Y.*1993); *In re Joint Eastern & Southern District Asbestos Litigation,* 774 F.Supp. 116 (S.D.N.Y.1991); *In re Joint Eastern & Southern District Asbestos Litigation,* 774 F.Supp. 113 (*S.D.N.Y.* 1991). There is no special expertise that state courts alone could bring to this determination.

 The sixth and final factor, whether Plaintiffs' rights would be adequately protected in state court, does not weigh towards abstention. Plaintiffs would, of course, receive adequate protection in their state court actions, but "although any possible inadequacy of the state forum to protect the federal plaintiffs' rights would provide a strong reason to exercise federal jurisdiction, the adequacy of the state forum does not weigh heavily in favor of dismissal pursuant to Colorado River." *King,* 885 F.Supp. at 98 (citing *Zemsky v. City of New York,* 821 F.2d 148, 153 (2d Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987), *reh'g denied,* 486 U.S. 1019, 108 S.Ct. 1760, 100 L.Ed.2d 221 (1988); *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 328 (2d Cir.1986)).

After review of the foregoing factors and consideration of the heavy presumption favoring exercise of jurisdiction, the Court finds that the "extraordinary circumstances" required for abstention by Colorado River are not present here. Raymark's motion to dismiss on *Colorado River* grounds is therefore denied.

#### 4. *Raymark Is Not Dismissed from Actions* by *Greff and Moore*

 Raymark claims that it has been dismissed from the actions brought by Plaintiffs Greff and Moore, based upon the procedural history.

On April 28, 1995, Judge Weiner transferred *Greff* and *Moore,* as well as *Ciletti* and *McPadden,* back to the Southern District of New York for "completion of necessary discovery, further mediation, A.D.R. or other proceedings." The transfer order severed and retained jurisdiction over issues of punitive damages.

By order entered on November 7, 1995, Judge Weiner dismissed Raymark from all pending MDL 875 actions, on the grounds that Raymark had declared bankruptcy during the pendency of the litigation. The dismissal was without prejudice, tolled the statute of limitations and stated that Plaintiffs were entitled to request reinstatement at a further date should circumstances so warrant. A list of cases attached to the dismissal order names *Greff* but not *Moore,* which Raymark states was "inadvertently omitted."

Plaintiffs assert that because *Greff* and *Moore* were transferred to the Southern District of New York before the dismissal order was issued, Raymark was never dismissed from the *Greff* and *Moore* actions, but Raymark counters that a bankruptcy stay was already in effect when the transfer order was issued, and therefore the transfer did not apply to Raymark.[6]

Whether or not Raymark's dismissal was effective as to *Greff* and *Moore,* the consolidation order issued by this Court for *Greff* and *Moore* effectively joined Raymark to those actions. *In re New York Asbestos Litig.,* March 28, 1997 Opinion.

### Conclusion

For the reasons set forth above, Raymark's motion to dismiss is hereby denied. A pretrial conference will be held on April 29, 1997 at 4:30 p.m.

It is so ordered.

---

**6.** The bankruptcy stay began on February 10, 1989 and was lifted on August 19, 1996.