**Phillip E. BATES, Plaintiff–Appellant–
Cross–Defendant,**

v.

**C & S ADJUSTERS, INC., Defendant–
Appellee–Cross–Claimant.**

**No. 313, Docket 92–7601.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 22, 1992.

Decided Dec. 2, 1992.

Robert P. Scheffer, Lockport, N.Y., for plaintiff-appellant-cross-defendant.

(Susan M. Hassinger, Pack, Hartman, Ball & Huckabone, Buffalo, N.Y., submitted papers on behalf of defendant-appellee-cross-claimant.)

Before: OAKES, NEWMAN, and PIERCE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns venue in an action brought under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692o (1988). Specifically, the issue is whether venue exists in a district in which the debtor resides and to which a bill collector's demand for payment was forwarded. The issue arises on an appeal by Phillip E. Bates from the May 21, 1992, judgment of the District Court for the Western District of New York (William M. Skretny, Judge), dismissing his complaint because of improper venue. We conclude that venue was proper under 28 U.S.C.A. § 1391(b)(2) (West Supp.1992) and therefore reverse and remand.

## Background

Bates commenced this action in the Western District of New York upon receipt of a collection notice from C & S Adjusters, Inc. ("C & S"). Bates alleged violations of the Fair Debt Collection Practices Act, and demanded statutory damages, costs, and attorney's fees. The facts relevant to venue are not in dispute. Bates incurred the debt in question while he was a resident of the Western District of Pennsylvania. The creditor, a corporation with its principal place of business in that District, referred the account to C & S, a local collection agency which transacts no regular business in New York. Bates had meanwhile moved to the Western District of New York. When C & S mailed a collection notice to Bates at his Pennsylvania address, the Postal Service forwarded the notice to Bates' new address in New York.

In its answer, C & S asserted two affirmative defenses and also counterclaimed for costs, alleging that the action was instituted in bad faith and for purposes of harassment. C & S subsequently filed a motion to dismiss for improper venue, which the District Court granted.

## Discussion

1. Venue and the 1990 amendments to 28 U.S.C. § 1391(b)

Bates concedes that the only plausible venue provision for this action is 28 U.S.C.A. § 1391(b)(2), which allows an action to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Prior to 1990, section 1391 allowed for venue in "the judicial district ... in which the claim arose." 28 U.S.C. § 1391(b) (1988). This case represents our first opportunity to consider the significance of the 1990 amendments.

Prior to 1966, venue was proper in federal question cases, absent a special venue statute, only in the defendant's state of citizenship. If a plaintiff sought to sue multiple defendants who were citizens of different states, there might be no district where the entire action could be brought. See 1A Part 2 James W. Moore, *Moore's Federal Practice,* ¶ 0.342[4] at 4091–95 (2d ed. 1991). Congress closed this "venue gap" by adding a provision allowing suit in the district "in which the claim arose." This phrase gave rise to a variety of conflicting interpretations. Some courts thought it meant that there could be only one such district; others believed there could be several. Different tests developed, with courts looking for "substantial contacts," the "weight of contacts," the place of injury or performance, or even to the boundaries of personal jurisdiction under state law. See Moore ¶ 0.342[5.–2–1] at 4142–45. District courts within the Second Circuit used at least three of these approaches. See *Weil v. New York State Department of Transportation,* 400 F.Supp. 1364, 1365 (S.D.N.Y.1975) (weight of contacts); *Rosen v. Savant Instruments, Inc.,* 264 F.Supp. 232, 237 (E.D.N.Y. 1967) (place of injury); *Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 890–92 (S.D.N.Y.1974) (discussing substantial contacts test, but declining to adopt it since result was same under sub-

stantial contacts and weight of contacts tests).

The Supreme Court gave detailed attention to section 1391(b) in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). The specific holding of *Leroy* was that Great Western, a Texas corporation, which had attempted to take over an Idaho corporation, could not bring suit in Texas against Idaho officials who sought to enforce a state anti-takeover law. Although the effect of the Idaho officials' action might be felt in Texas, the Court rejected this factor as a basis for venue, since it would allow the Idaho officials to be sued anywhere a shareholder of the target corporation could allege that he wanted to accept Great Western's tender offer. *Leroy*, 443 U.S. at 186, 99 S.Ct. at 2718. The Court made several further observations: (1) the purpose of the 1966 statute was to close venue gaps and should not be read more broadly than necessary to close those gaps, *id.* at 184, 99 S.Ct. at 2717; (2) the general purpose of the venue statute was to protect defendants against an unfair or inconvenient trial location, *id.* at 183–84, 99 S.Ct. at 2716; (3) location of evidence and witnesses was a relevant factor, *id.* at 186, 99 S.Ct. at 2718; (4) familiarity of the Idaho federal judges with the Idaho anti-takeover statute was a relevant factor, *id.* at 186, 99 S.Ct. at 2718; (5) plaintiff's convenience was not a relevant factor, *id.* at 183, 99 S.Ct. at 2716; and (6) in only rare cases should there be more than one district in which a claim can be said to arise, *id.* at 184–85, 99 S.Ct. at 2717.

Subsequent to *Leroy* and prior to the 1990 amendment to section 1391(b), most courts have applied at least a form of the "weight of contacts" test, *see, e.g., Transistor Devices, Inc. v. Tracor, Inc.*, 654 F.Supp. 601, 604, 605 n. 4 (E.D.N.Y.1987). Courts continued to have difficulty in determining whether more than one district could be proper. *See* Moore ¶ 0.342[5.–2-2] at 4150–53.

■ Against this background, we understand Congress' 1990 amendment to be at most a marginal expansion of the venue provision. The House Report indicates that the new language was first proposed by the American Law Institute in a 1969 Study, and observes:

> The great advantage of referring to the place where things happened ... is that it avoids the litigation breeding phrase "in which the claim arose." It also avoids the problem created by the frequent cases in which substantial parts of the underlying events have occurred in several districts.

H.R.Rep. No. 734, 101st Cong., 2d Sess. 23, *reprinted in* 1990 U.S.C.C.A.N. 6860, 6869. Thus it seems clear that *Leroy's* strong admonition against recognizing multiple venues has been disapproved. Many of the factors in *Leroy*—for instance, the convenience of defendants and the location of evidence and witnesses—are most useful in distinguishing between two or more plausible venues. Since the new statute does not, as a general matter, require the District Court to determine the best venue, these factors will be of less significance. *See Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc.*, 784 F.Supp. 306, 316–17 (D.S.C.1992). Apart from this point, however, *Leroy* and other precedents remain important sources of guidance. *See American Trade Partners, L.P. v. A–1 International Importing Enterprises Ltd.*, 757 F.Supp. 545, 557 n. 18 (E.D.Pa. 1991).

### 2. Fair Debt Collection Practices Act

Under the version of the venue statute in force from 1966 to 1990, at least three District Courts held that venue was proper under the Fair Debt Collection Practices Act in the plaintiff's home district if a collection agency had mailed a collection notice to an address in that district or placed a phone call to a number in that district. *See Murphy v. Allen County Claims & Adjustments, Inc.*, 550 F.Supp. 128, 130–32 (S.D.Ohio 1982); *Gachette v. Tri–City Adjustment Bureau*, 519 F.Supp. 311, 313–14 (N.D.Ga.1981); *Lachman v. Bank of Louisiana in New Orleans*, 510 F.Supp. 753, 760 (N.D.Ohio 1981). None of these cases involved the unusual fact, present in this case, that the defendant did not

deliberately direct a communication to the plaintiff's district.

We conclude, however, that this difference is inconsequential, at least under the current venue statute. The statutory standard for venue focuses not on whether a defendant has made a deliberate contact—a factor relevant in the analysis of personal jurisdiction [1]—but on the location where events occurred. Under the new version of section 1391(b)(2), we must determine only whether a "substantial part of the events ... giving rise to the claim" occurred in the Western District of New York.

In adopting this statute, Congress was concerned about the harmful effect of abusive debt practices on consumers. *See* 15 U.S.C. § 1692(a) ("Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."). This harm does not occur until receipt of the collection notice. Indeed, if the notice were lost in the mail, it is unlikely that a violation of the Act would have occurred.[2] Moreover, a debt collection agency sends its dunning letters so that they will be received. Forwarding such letters to the district to which a debtor has moved is an important step in the collection process. If the bill collector prefers not to be challenged for its collection practices outside the district of a debtor's original residence, the envelope can be marked "do not forward." We conclude that receipt of a collection notice is a substantial part of the events giving rise to a claim under the Fair Debt Collection Practices Act.

The relevant factors identified in *Leroy* add support to our conclusion. Although "bona fide error" can be a defense to liability under the Act, 15 U.S.C. § 1692k(c), the alleged violations of the Act turn largely not on the collection agency's intent, but on the content of the collection notice. The most relevant evidence—the collection notice—is located in the Western District of New York. Because the collection agency appears not to have marked the notice with instructions not to forward, and has not objected to the assertion of personal jurisdiction, trial in the Western District of New York would not be unfair.

### Conclusion

The judgment of the District Court is reversed, and the matter is remanded for further proceedings consistent with this decision.

---

1. C & S has waived whatever claim it might have had that the District Court lacked personal jurisdiction over it. Waiver resulted from C & S's failure to allege lack of personal jurisdiction in its answer or motion to dismiss. *See* Fed. R.Civ.P. 12(b)(2), (h).

2. Although we need not decide the issue today, we note that at least one court has indicated that a plaintiff's cause of action might not accrue until receipt of the collection notice for purposes of the Act's one-year statute of limita-

tions, 15 U.S.C. § 1692k(d) (1988). *See Seabrook v. Onondaga Bureau of Medical Economics, Inc.,* 705 F.Supp. 81, 83 (N.D.N.Y.1989) ("more likely" that statute would start to run only "on the date the debtor received the communication"). *But see Mattson v. U.S. West Communications, Inc.,* 967 F.2d 259, 261 (8th Cir.1992) (statute starts to run on date of mailing); *Drumright v. Collection Recovery, Inc.,* 500 F.Supp. 1 (M.D.Tenn.1980) (statute starts to run on date of mailing for some violations).