**SACODY TECHNOLOGIES, INC. Plaintiff,**

v.

**AVANT, INCORPORATED, and Roger Kuhns, Defendants.**

**No. 93 Civ. 4654 (PKL).**

United States District Court, S.D. New York.

Sept. 14, 1994.

Max Gitter, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants.

Daniel Gildin, Kaufmann, Feiner, Yamin, Gildin & Robbins, New York City, for plaintiff.

## MEMORANDUM ORDER

LEISURE, District Judge:

This is an action alleging breach of a confidentiality agreement and unfair competition. Plaintiff is Sacody Technologies, Inc. ("Sacody"), a New York corporation. Sacody's principal place of business is City Island, County of Bronx, State of New York. Defendants are Avant, Incorporated ("Avant"), a Massachusetts corporation, and Roger Kuhns ("Kuhns"), Avant's President. Avant's principal place of business is Concord, County of Middlesex, Commonwealth of Massachusetts. Kuhns resides in Lincoln, Massachusetts. Sacody alleges that the amount in controversy exceeds $50,000 exclusive of interest and costs. This Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

Defendants have moved this Court to dismiss the action for lack of personal jurisdiction or improper venue or, alternatively, to dismiss or stay the action in light of an action instituted by Avant against Sacody in Massachusetts state court. For the reasons stated below, defendants' motion is denied in its entirety.

## BACKGROUND

During 1988 and 1989, Sacody designed and developed a photographic-identification security system called the SA1200, consisting of a terminal and a supporting software program. During December 1990 or January 1991, Kuhns saw a Sacody advertisement for the SA1200 and telephoned Sacody in New York to inquire about the system. During January 1991, Kuhns travelled to Sacody's research lab in Bellmore, New York, on Avant's behalf. In New York, Kuhns received a demonstration of the SA1200, and according to Sacody,[1] he requested that Sacody provide Avant with an SA1200 prototype so that Avant could demonstrate it at trade shows. Sacody responded by explaining that it would not allow a potential competitor to have such access to the SA1200, absent a confidentiality agreement. Either at this New York meeting, or during a telephone call from Kuhns to Sacody shortly thereafter, Kuhns orally agreed to treat all information about the SA1200 as proprietary and confidential and to sign a written confidentiality agreement when one was prepared. In reliance on this oral agreement, Sacody delivered an SA1200 prototype to Avant in Massachusetts. Kuhns executed a written confidentiality agreement concerning the SA1200 on Avant's behalf in Massachusetts, on April 8, 1991 (the "Confidentiality Agreement") and faxed an executed copy to Sacody's New York office.

Avant proceeded to display the prototype at several trade shows in the United States and Europe. During the period of its custodianship over the prototype, Avant returned the system to Sacody in New York several times for repairs. In May, 1991, Kuhns again visited Sacody in New York, this time in order to introduce Sacody to a potential customer for the SA1200. However, neither this visit, nor Avant's other promotional efforts, resulted in any SA1200 sales.

---

**1.** Although plaintiff bears the burden of establishing jurisdiction over defendants, prior to an evidentiary hearing, plaintiff need only make a *prima facie* showing that jurisdiction exists. *See A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79 (2d Cir.1993). At this early stage of the litigation, the Court must construe all pleadings and affidavits in the light most favorable to plaintiff and must resolve any doubts in plaintiff's favor. *See id.* at 79–80 (citing *CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985)).

During late 1991, Sacody became suspicious that Avant was not respecting the confidentiality of the SA1200 technology, and requested that Avant return the prototype. Avant did so, and Sacody did not provide Avant with further access to the SA1200. By letter dated June 24, 1993, Sacody, through counsel, accused Avant of using Sacody's confidential information to develop a competing product and threatened legal action. In response to this letter, Avant commenced a declaratory judgment action against Sacody in Massachusetts Superior Court on July 1, 1993 (the "Massachusetts Action"). There, Avant seeks a declaration that no binding confidentiality agreement exists between the parties or that if such an agreement does exist, Avant has not breached it.

Sacody filed this action on July 9, 1993.

## DISCUSSION

## I. PERSONAL JURISDICTION

■ Avant and Kuhns first argue that they are not subject to personal jurisdiction in New York under C.P.L.R. § 301, which provides general jurisdiction over defendants who are "doing business" in New York; nor under C.P.L.R. § 302, which provides long-arm jurisdiction over defendants for a specific cause of action based on the relationship among the parties, the cause of action, and the State of New York.[2] Sacody responds that Avant and Kuhns are subject to long-arm jurisdiction in New York under C.P.L.R. § 302(a)(1) because Sacody's claims arise from conduct by Kuhns on Avant's behalf that constitutes a transaction of business within New York.[3]

Section § 302(a)(1) provides in relevant part:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

1. transacts any business within the state. . . .

N.Y.Civ.Prac.L. & R. § 302(a) (McKinney 1980).

The "clearest sort of case" in which a defendant has "transacted any business within the state" for purposes of § 302(a)(1) involves "purposeful activity [by a defendant] in New York directed toward and resulting in the establishment of a contractual relationship" with a New York corporation. *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 653–54, 394 N.Y.S.2d 844, 847–48, 363 N.E.2d 551, 555 (1977) (defendant "transacted business" by negotiating and entering into employment contract during single visit to New York) (distinguishing *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), based on "nature and quality" of New York visit at issue in each case, visit in *McKee* constituting "merely a casual attempt by defendant's representative to look into or smooth out difficulties between plaintiff and plaintiff's customers"); *see also Burlington Industries, Inc. v. Salem International Co.*, 645 F.Supp. 872, 874 (S.D.N.Y.1986) (Weinfeld, J.); *Chemco International Leasing, Inc. v. Meridian Engineering, Inc.*, 590 F.Supp. 539, 541–42 (S.D.N.Y.1984). However, as the Court of Appeals of New York has reasoned,

even though the last act marking the formal execution of the contract may not have occurred within New York, the statutory test may be satisfied by a showing of other purposeful acts performed by [a defendant] in this State in relation to the con-

**2.** Avant and Kuhns have not argued that the Fifth Amendment's Due Process Clause prevents this Court from exercising personal jurisdiction over them under the circumstances of this case.

**3.** Sacody expressly concedes that it cannot at this stage of the litigation allege facts sufficient to warrant a finding that either defendant is "doing business" in New York, but asks the Court to allow discovery on this point. Moreover, Sacody did not respond to defendants' arguments that neither Avant nor Kuhns is subject to jurisdiction in New York based on their alleged commission of tortious acts inside or outside of New York. As detailed below, the Court finds that Sacody has made a *prima facie* showing of long-arm jurisdiction based on defendants' alleged transaction of business within New York, and that there are not other grounds upon which to dismiss or stay the action. To the extent that plaintiff seeks permission to undertake discovery, the Court will address this matter, among others, at the pretrial conference scheduled below.

tract, albeit preliminary or subsequent to its execution.

*Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Incorporated,* 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75, *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); *see also Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. 1523, 1530 (S.D.N.Y.1985) (Leisure, J.) ("significant contract negotiations in New York constitute transaction of business here" for purposes of jurisdiction under § 302(a)(1)); *Silverman v. Worsham Brothers Co.,* 595 F.Supp. 959, 961 (S.D.N.Y.1984) (Sweet, J.) (meetings among the parties within New York that "appear to be important in defining the terms of the final contract and structuring the relationship among the parties" sufficient to confer jurisdiction under § 302(a)(1)).

A cause of action "arises from" the transaction of business by a defendant within New York for purposes of § 302(a)(1) when there exists "a substantial nexus" between the business transacted and the cause of action sued upon. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 60 (2d Cir. 1985); *see also Wilhelmshaven Acquisition Corp. v. Asher,* 810 F.Supp. 108, 114–15 (S.D.N.Y.1993) (meetings over two days in New York, which meetings had "substantial connection" to later, alleged breach of contract, sufficient to confer jurisdiction under § 302(a)(1)).

The Court finds that, viewing the pleadings and affidavits in the light most favorable to Sacody, and resolving any doubts in favor of Sacody, *see A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993), Sacody's claims arise from the transaction of business within New York by Kuhns on Avant's behalf. Kuhns initiated the relationship between Sacody on the one hand, and Avant and Kuhns on the other, when he called Sacody in New York to inquire about the SA1200. Kuhns then travelled to Saco-

dy's Bellmore, New York research facility. There, after receiving a demonstration of the SA1200, Kuhns first requested that Sacody provide Avant with a prototype so that Avant could display it at trade shows. This request plainly was directed toward "establishing a continuing relationship [among] the parties," *George Reiner,* 41 N.Y.2d at 653, 394 N.Y.S.2d at 847, 363 N.E.2d at 554 (1977); and Sacody responded to this request by explaining that Sacody would not provide a competitor with such access to the SA1200 absent a confidentiality agreement. Thus, at this New York meeting, the simple structure of the ensuing relationship among the parties came into relief: Sacody would consider furnishing Avant with an SA1200 prototype so that Avant could demonstrate it at trade shows, if Avant would agree to respect the confidentiality of the SA1200 technology.

Either at this New York meeting, or during a phone call from Kuhns to Sacody shortly afterwards, Kuhns renewed his request for a prototype and orally agreed, not only to respect the confidentiality of the SA1200 technology, but also to execute a written confidentiality agreement when one was prepared.[4] Even if Kuhns made these representations, not at the New York meeting, but during a phone call shortly afterwards, this conduct by Kuhns remains highly significant for purposes of § 302(a)(1). During this phone call, Kuhns renewed the request for a prototype that he first made to Sacody at the New York meeting, and he allayed Sacody's concerns about confidentiality with his representations as to confidentiality *per se* and as to a written confidentiality agreement. Kuhns' conduct during this phone call again looked toward establishing a continuing relationship among the parties. Furthermore, by this time the uncomplicated structure of the parties' ensuing relationship was manifest. Viewed as they must be—in the context of the prior New York meeting—Kuhns'

4. If this conduct by Kuhns occurred at the New York meeting, this portion of defendants' motion might be decided by citation to the principles established in *George Reiner,* 41 N.Y.2d at 653–54, 394 N.Y.S.2d at 847–48, 363 N.E.2d at 554 ("clearest case" where jurisdiction exists under § 302(a)(1) involves cause of action based on contract negotiated and entered into during sin-

gle visit to New York) and *Longines–Wittnauer,* 15 N.Y.2d at 457, 261 N.Y.S.2d at 18, 209 N.E.2d at 75 (jurisdiction exists under § 302(a)(1) despite fact that formal execution of contract sued upon occurred outside New York, given sufficient other purposeful conduct within New York in relation to contract).

later dealings with Sacody concerning the Confidentiality Agreement, including his oral agreements and his faxing of the executed Confidentiality Agreement to Sacody in New York, "far exceeded the simple placing of an order by telephone." *Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 18, 308 N.Y.S.2d 337, 340, 256 N.E.2d 506, 508 (1970).

Furthermore, the Confidentiality Agreement at the heart of this action provides that it "shall be construed in accordance with and governed by the laws of the State of New York." Affidavit of Roger J. Kuhns ("Kuhns Aff.") Exh. B, at 2. The parties disagree sharply over the significance of this clause for purposes of § 302(a)(1), Sacody relying on *Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 91 (S.D.N.Y.1974) (choice-of-law clause significant for § 302(a)(1) purposes), and Avant and Kuhns relying on *Galgay v. Bulletin Co.*, 504 F.2d 1062, 1066 (2d Cir.1974) (choice-of-law clause not significant for § 302(a)(1) purposes).

■ The Court finds that the clause is significant for purposes of jurisdiction under § 302(a)(1). In *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 366–67 (1986), the Second Circuit relied on *Uniroyal* and the Supreme Court's decision in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481–82, 105 S.Ct. 2174, 2187–88, 85 L.Ed.2d 528 (1985) (choice-of-law clause significant for purposes of jurisdictional analysis under Fourteenth Amendment's Due Process Clause), as authority for its holding that a district court had "erred in not giving some weight to [a] choice of law provision" when interpreting § 302(a)(1), although the *CutCo* Court cited *Galgay* for another jurisdictional proposition. *See also Viacom Int'l, Inc. v. Melvin Simon*

*Productions, Inc.*, 774 F.Supp. 858, 865 (S.D.N.Y.1991) (choice-of-law clause significant for purposes of jurisdictional analysis under § 302(a)(1)); *Don King Productions, Inc. v. Douglas*, 735 F.Supp. 522, 527–28 (S.D.N.Y.1990) (same); *Citicorp International Trading Co. v. Western Oil & Refining Co.*, 708 F.Supp. 86, 88 (S.D.N.Y.1989) (same). Moreover, the Court finds that *Uniroyal* and the latter authorities represent the better view. By adopting the choice-of-law clause, Avant and Kuhns " 'invok[ed] the benefits and protections of [New York's] laws,' " *Parke–Bernet*, 26 N.Y.2d at 18, 308 N.Y.S.2d at 341, 256 N.E.2d at 508–09. The Court therefore considers the choice-of-law clause a significant contact with New York for purposes of § 302(a)(1).[5]

The relative simplicity and informality of the parties' relationship bear emphasis. That prong of the parties' relationship, pursuant to which Avant would promote the SA1200 through trade show demonstrations, was never reduced to writing; and Sacody first provided Avant with an SA1200 prototype in reliance on Kuhns' oral representations as to confidentiality *per se* and as to a written confidentiality agreement. Furthermore, the Confidentiality Agreement that Kuhns ultimately executed on Avant's behalf is only two pages long. *See* Kuhns Aff. Exh. B. The breakdown of this relationship inspired Sacody's claims, and the relative simplicity and informality that characterized the relationship inform the Court's evaluation of the "nature and quality" of Kuhns' actions for jurisdictional purposes, *cf. George Reiner*, 41 N.Y.2d at 653–54, 394 N.Y.S.2d at 848, 363 N.E.2d at 554–55 (citing *Harry Winston, Inc. v. Waldfogel*, 292 F.Supp. 473, 481 (S.D.N.Y. 1968)).

---

**5.** Sacody also points to Kuhns' second visit to New York, for the purpose of introducing Sacody to a potential SA1200 customer, as providing a further basis on which to ground jurisdiction here under § 302(a)(1). Avant and Kuhns respond, in substance, that Kuhns' second visit to New York was insufficiently related to Sacody's claims to be considered relevant for this purpose.

The Court finds that, even viewing the pleadings and affidavits in the light most favorable to Sacody, the relationship between the Confidentiality Agreement and Kuhns' second visit to New York is too tenuous to consider the second visit

significant for purposes of § 302(a)(1). Sacody has not alleged that this visit was important in confirming or redefining the structure of the parties' relationship, or that during this visit Kuhns breached the confidentiality agreement or otherwise acquired information covered by the Confidentiality Agreement. In this light, the Court finds that there is not a "substantial nexus" between Kuhns' second visit to New York and Sacody's claims, and the Court does not consider this visit relevant for purposes of jurisdiction under § 302(a)(1).

Finally, there is no dispute that Kuhns was acting in his capacity as Avant's President at all relevant times, so that his conduct is properly imputed to Avant for jurisdictional purposes, *see* N.Y.Civ.Prac.L. & R. § 302(a) (McKinney 1980) (principal subject to jurisdiction based on agent's conduct). Hence, viewing the underlying circumstances in their totality, and in the light most favorable to Sacody, the Court finds that Sacody's claims arise from a transaction of business within New York by Kuhns on Avant's behalf. Defendants' motion to dismiss for lack of personal jurisdiction is denied, on the present record.

## II. VENUE

■ Avant and Kuhns next argue that this District is not a proper venue for Sacody's claims under 28 U.S.C. § 1391(a). Sacody premises venue here under § 1391(a)(2), which provides that venue is proper in a diversity action, if the action is filed in a "judicial district where a substantial part of the events or omissions giving rise to the claim occurred...." 28 U.S.C. § 1391(a)(2) (1991).

The current formulation of § 1391(a)(2) is the result of an amendment effected by the Judicial Improvements Act of 1990, Pub.L. No. 101–650, Title III, § 311, 104 Stat. 5114 (1990), and supersedes a requirement that a diversity action be brought in the district where "the claim arose." 28 U.S.C.S. § 1391(a) (Supp.1994). The amendment evinces Congress' intent that venue may be proper in more than one federal district in a given case. *See Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir.1992) (citing H.R.Rep. No. 734, 101st Cong., 2d Sess. 23, reprinted in 1990 U.S.C.C.A.N. 6860, 6869). The standard set forth in § 1391(a)(2) may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action. *See Bates*, 980 F.2d at 867–68 (interpreting identical language of

§ 1391(b)(2), applicable in federal question cases: "We conclude that receipt [within the district] of a collection notice is a substantial part of the events giving rise to a claim under the Fair Debt Collection Practices Act."); *Gruntal & Co., Inc. v. Kauachi*, No. 92 Civ. 2840, 1993 WL 33345, at *2 (S.D.N.Y. Feb. 5, 1993) (venue proper in diversity common-law fraud action based on telephone calls during which allegedly fraudulent representations were made, where one party to calls was within district during calls).

The Court finds that Sacody has alleged facts sufficient to ground venue in this District under § 1391(a)(2). First, there is no dispute that at least some of defendants' "dealings with Sacody in relation to the Confidentiality Agreement took place over the phone and by correspondence and facsimile between Avant and Sacody in Massachusetts and New York, respectively." Kuhns Aff. at ¶ 10. In particular, Sacody argues, *inter alia*, that "the Confidentiality Agreement was transmitted from and to [Sacody's] offices within this district." Sacody's Memorandum of Law in Opposition to Defendants' Motions at 11; *see also* Kuhns' Aff. at ¶ 8 ("Avant signed and faxed to Sacody a confidentiality agreement prepared by Sacody"); Affidavit of John Codignotto ("Codignotto Aff.") at ¶ 14 (the Confidentiality Agreement was returned to "[Sacody's] New York office"); *id.* Exh. C (alleged cover memo that Kuhns faxed to Sacody with Confidentiality Agreement indicates that fax was sent to "212" area code). In this light, the Court finds that Sacody has sufficiently alleged that "a substantial part" of the events giving rise to Sacody's claims "occurred" within this District. Defendants' motion to dismiss for improper venue is denied, on the present record.

## III. *COLORADO RIVER*

■ Avant and Kuhns' final argument is that this Court should dismiss or stay this action under the *Colorado River* [6] doctrine, in light of an action instituted by Avant against Sacody in Massachusetts Superior Court.[7]

---

**6.** *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483, *reh'g denied*, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976).

**7.** Kuhns was not a party to the Massachusetts Action when Avant and Kuhns filed this motion.

Sacody responds that, under the circumstances, neither a dismissal nor a stay[8] of this action is appropriate.

The federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. Although "[a]s between federal district courts ... the general principle is to avoid duplicative litigation," the general rule "as between state and federal courts ... is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....' " *Id.* (quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910)). Nevertheless, "exceptional" circumstances occasionally do arise, "permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration." *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1247. However, in order to prevail, the moving party must carry a "heavy burden," *Orix Credit Alliance, Inc. v. Bell Realty, Inc.,* No. 93 Civ. 4949, 1994 WL 86394, at *2 (S.D.N.Y. March 16, 1994); *National Union Fire Ins. Co. v. Thomas* 713 F.Supp. 62 (S.D.N.Y.1988), for "[o]nly the clearest of justifications will warrant dismissal," *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247.

■ The Supreme Court has elaborated: the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983); *see also General Reinsurance Corp. v. CIBA-Geigy Corp.,* 853 F.2d 78, 81 (2d Cir.1988). The relevant factors include: (1) the assumption by either court of jurisdiction over *res* or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent fora, and the progress of the federal court litigation; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *See General Reinsurance,* 853 F.2d at 78 (citing *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1246–47; *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937).

The Court finds that this case does not present "exceptional circumstances" that would warrant a dismissal of this action pursuant to *Colorado River*. First, "neither court ha[s] jurisdiction over any res or property, a fact that 'militate[s] against dismissal' of the federal suit." *General Reinsurance,* 853 F.2d at 81 (quoting *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327–28 (2d Cir.1986)).

Second, neither forum appears to be significantly more convenient than the other, on balance. Although the federal forum is located in Sacody's home state of New York, so that Avant and Kuhns would be substantially inconvenienced by having to litigate here, *see* Kuhns Aff. at ¶¶ 17–18, the state forum is located in Avant and Kuhns' home state of Massachusetts, so that Sacody would be substantially inconvenienced by having to litigate there, *see* Codignotto Aff. at ¶ 28. Where, as here, dismissing the case would not result in a substantial net gain in convenience, this factor does not favor dismissal. *Cf. American Motorists Ins. Co. v. Springs Industries, Inc.,* No. 91 Civ. 2260, 1991 WL 155777 at *3 (S.D.N.Y. August 8, 1991) (Duffy, J.) ("a motion to transfer venue should not be granted when the result is merely to shift the inconvenience to the plaintiff").

Third, there is no risk that this Court's exercise of jurisdiction will result in litigation of this dispute in piecemeal fashion. All of the relevant parties are before this Court.

---

8. The analysis that is applied to determine whether to dismiss or, alternatively, to stay the federal proceeding pursuant to the *Colorado River* doctrine is the same. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 27–28, 103 S.Ct. 927, 943–44, 74 L.Ed.2d 765 (1983); *Bethlehem Contracting Company v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327 n. 1 (2d Cir.1986). As a result, for convenience, the Court will refer to Avant and Kuhns' motion pursuant to *Colorado River* as one for dismissal, rather than as one for a dismissal or stay.

Moreover, because any case involving parallel proceedings presents a risk of duplicative litigation or a rush to judgment, the existence of those risks can weigh only modestly in favor of dismissal; otherwise, dismissals pursuant to *Colorado River* would be the rule, not the exception, in cases involving parallel proceedings in state and federal court. *See National Union,* 713 F.Supp. at 66.

Fourth, the prior filing of the Massachusetts Action is not significant on the facts of this case because little progress has been achieved to date in either forum. Avant filed the Massachusetts Action, on July 1, 1993. Sacody filed this action eight days later, on July 9, 1993. However, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Cone,* 460 U.S. at 21–22, 103 S.Ct. at 939–41 (although federal suit was filed 19 days after state suit, Court considered federal suit "prior" for *Colorado River* purposes because "federal suit was running well ahead of ... state suit"); *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 328 (2d Cir.1986). Although the Massachusetts Superior Court held on December 22, 1993, that Sacody is subject to personal jurisdiction in Massachusetts, *see Avant, Inc. v. Sacody Technologies, Inc.,* Civil Docket # MICV93–03850 (Mass.Super.Ct. Dec. 22, 1993), neither party has informed this Court that substantial discovery or substantial further proceedings have occurred in the Massachusetts Action. As a result, this factor does not favor dismissal.

Fifth, there is no dispute that state law will provide the substantive rule(s) of decision in this case. Avant and Kuhns argue that because federal substantive law is not controlling here, this factor favors dismissal. The Court disagrees. In any case in which a federal court has subject matter jurisdiction based solely on diversity of citizenship, state law will provide the rule of decision. Therefore, unless dismissals pursuant to *Colorado River* are to become a familiar occurrence in diversity actions, defendants' argument must fail. Although the presence of a federal substantive interest weighs heavily in favor of the exercise of federal jurisdiction, the absence of such an interest, without more, is not a strong reason to dismiss pursuant to *Colorado River. See Bethlehem Contracting,* 800 F.2d at 328; *National Union,* 713 F.Supp. at 67.

Sixth and finally, although Kuhns was not a party to the Massachusetts Action when defendants filed the present motion, Avant and Kuhns have argued, and Sacody has not disputed, that as a procedural matter, Sacody can join Kuhns there. In this light, there is no reason to doubt that Sacody's legal rights would be adequately protected in the Massachusetts Action. However, although any possible inadequacy of the state forum to protect the federal plaintiff's rights would provide a strong reason to exercise federal jurisdiction, the adequacy of the state forum does not weigh heavily in favor of dismissal pursuant to *Colorado River. See Zemsky v. City of New York,* 821 F.2d 148, 153 (2d Cir.) (Winter, J.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987), *reh'g denied,* 486 U.S. 1019, 108 S.Ct. 1760, 100 L.Ed.2d 221 (1988); *Bethlehem Contracting,* 800 F.2d at 328.

Balancing the foregoing considerations, and giving due "weight to the heavy presumption favoring the exercise of jurisdiction," *id.* at 327, the Court finds that a dismissal pursuant to *Colorado River* is not warranted under the circumstances. No more can be said in favor of dismissal here than that there is underway a parallel state proceeding in which the federal diversity plaintiff's state law claims may be adequately adjudicated. However, this Court's "task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction ...; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Cone* 460 U.S. at 25–26, 103 S.Ct. at 941–43. There is nothing "exceptional" about this case. Defendants' motion for a dismissal pursuant to the *Colorado River* doctrine is therefore denied.

## CONCLUSION

For the foregoing reasons, this Court hereby denies, on the present record, defendants' motions to dismiss this action for lack of personal jurisdiction or improper venue, or alternatively, to dismiss or stay this action pursuant to *Colorado River*. All parties are hereby ordered to appear before this Court on October 14, 1994, at 11:30 AM, for a pretrial conference in Courtroom 312, United States Courthouse, 40 Centre Street, New York, New York.

**SO ORDERED.**