**CONSTITUTION REINSURANCE CORPORATION, Plaintiff,**

v.

**STONEWALL INSURANCE COMPANY, Defendant.**

**No. 94 Civ. 1888 (PKL).**

United States District Court, S.D. New York.

Jan. 3, 1995.

ments, in the light of the circumstances under which they are made, not misleading." 17 C.F.R. § 230.408 (1994).

Kevin Walsh, Kelly Drye & Warren, New York City.

John B. Glendon, Pepper, Hamilton & Scheetz, New York City.

## MEMORANDUM ORDER

LEISURE, District Judge.

This is an action for a declaratory judgment. Plaintiff is Constitution Reinsurance Corporation ("Constitution"), a New York corporation with its principal place of business in New York, New York. Defendant is Stonewall Insurance Corporation ("Stonewall"), an Alabama corporation with its principal place of business in Birmingham, Alabama. Constitution seeks a declaration that it is not obligated to pay a claim that Stonewall has filed with Constitution pursuant to two reinsurance agreements between the parties. The amount in controversy exceeds $50,000 exclusive of interest and costs. This Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

Stonewall has moved to dismiss the action for improper venue or, alternatively, to transfer the action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, Stonewall's motion is denied in its entirety.

## BACKGROUND

A drunk driver killed the parents of a young child in Hidalgo County, Texas, in 1983 (the "Accident"). In 1987, the child's legal guardian brought an action in Texas state court against Economy Oil Company ("Economy"), alleging that Economy had sold beer to the drunk driver shortly before the Accident, but that Economy should have recognized that driver was already drunk and therefore refused to make the sale (the "Child's Action"). In 1989, Economy filed for Chapter 11 bankruptcy in the Northern District of Texas, and the Child's Action was removed to the Bankruptcy Court. In December 1991, the Bankruptcy Court lifted the stay and allowed the Child's Action against Economy to proceed. Economy defaulted, and in 1992, the Bankruptcy Court entered judgment in favor of the child against Economy in the amount of $14,234,257.80 (the "Default Judgment").

In March 1991, Economy instituted a separate action against Stonewall in the United States District Court for Northern District of Texas (the "Texas Action"). Economy alleged in the Texas Action that Stonewall was obligated to defend and indemnify Economy in the Child's Action pursuant to an insurance policy that Stonewall had issued to Economy's parent company, and that was in

effect at the time of the Accident (the "Underlying Policy"). One of Economy's claims against Stonewall in the Texas Action was that the Underlying Policy provided coverage for an insured's losses arising out of liquor sales ("Liquor Coverage"). However, the District Court entered summary judgment against Economy on this point in June 1993. Trial on Economy's other claims against Stonewall, which were not brought pursuant to the Underlying Policy, was scheduled to begin on January 24, 1994. But Stonewall settled the Texas Action for $3,250,000, on January 5, 1994 (the "Settlement").

On February 28, 1994, Stonewall filed a claim with Constitution for the amount of the Settlement, pursuant to two facultative reinsurance certificates that Constitution had issued to Stonewall reinsuring the Underlying Policy (the "Reinsurance Contracts"). Constitution denied liability on Stonewall's claim on March 18, 1994, and instituted this action for a declaratory judgment. Constitution here alleges that the Reinsurance Contracts do not obligate Constitution to pay a claim by Stonewall that arises out of a settlement of claims against Stonewall that were not made pursuant to the Underlying Policy. Constitution further alleges that Stonewall entered into the Settlement, not out of concern that Stonewall would be held liable in the Texas Action pursuant to the Underlying Policy, but out of concern that Stonewall would be held liable on Economy's other claims against Stonewall. Constitution therefore concludes that the Reinsurance Contracts do not obligate Constitution to pay Stonewall's claim against it. Stonewall responds that it entered into the Settlement, in part, out of concern that it would be held liable in the Texas Action pursuant to the Underlying Policy—either because the district court would reconsider its grant of summary judgment for Stonewall on the Liquor Liability point, or because the district court's grant of summary judgment on this point would be reversed on appeal. Stonewall, of course, concludes that the Reinsurance Contracts do obligate Constitution to pay Stonewall's claim against Constitution.

## DISCUSSION

Stonewall has moved to dismiss for this action improper venue pursuant to Fed. R.Civ.Pro. 12(b)(3) or, alternatively, to transfer this action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). The Court takes these matters up in turn.

### I. Venue.

Stonewall argues that venue is not proper in this District pursuant § 1391(a)(2) because the Underlying Policy was entered into in Texas, and the Accident and Settlement occurred in Texas. Constitution responds that venue is proper here under § 1391(a)(2) because the Reinsurance Contracts were negotiated by means of telephone calls and facsimile transmissions between New York and Texas; Constitution executed the Reinsurance Contracts in New York; and the Reinsurance Contracts were to be performed by Constitution in New York.

Section 1391(a)(2) provides that venue is proper in a diversity action, if the action is filed in a "judicial district [where] a substantial part of the events or omissions giving rise to the claim occurred...." 28 U.S.C. § 1391(a)(2) (1991). The current formulation of § 1391(a)(2) is the result of an amendment effected by the Judicial Improvements Act of 1990, Pub.L. No. 101–650, Title III, § 311, 104 Stat. 5114 (1990), and supersedes a requirement that a diversity action be brought in the district where "the claim arose." 28 U.S.C.S. § 1391(a) (Supp.1994). The amendment evinces Congress' intent that venue may be proper in more than one federal district in a given case. *See Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 868 (2d Cir. 1992) (citing H.R.Rep. No. 734, 101st Cong., 2d Sess. 23, reprinted in 1990 U.S.C.C.A.N. 6802, 6860, 6869).

The standard set forth in § 1391(a)(2) "may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." *Sacody Technologies, Inc. v. Avant, Incorporated,* 862 F.Supp. 1152, 1157 (S.D.N.Y.1994) (Leisure, J.) (citing *Bates,* 980 F.2d at 867–68 (interpreting identical language of § 1391(b)(2), applicable in

federal question cases: "We conclude that receipt [within the district] of a collection notice is a substantial part of the events giving rise to a claim under the Fair Debt Collection Practices Act."); *Gruntal & Co., Inc. v. Kauachi,* No. 92 Civ. 2840, 1993 WL 33345, at *2 (S.D.N.Y. Feb. 5, 1993) (venue proper in diversity common-law fraud action based on telephone calls during which allegedly fraudulent representations were made, where one party to calls was within district during calls)); *compare Friedman v. Revenue Management of New York, Inc.,* 38 F.3d 668, 672 (2d Cir.1994) (affirming dismissal for improper venue under § 1392(b)(2) where "all the events alleged in [plaintiff's] complaint occurred in Illinois ... [and] all relevant corporate assets, offices, books, and records are located in Illinois").

The Court finds that venue in this District is proper under § 1391(a)(2). The ultimate issue in this case is whether Constitution is obligated to pay a claim that Stonewall has filed pursuant to the Reinsurance Contracts. The Reinsurance Contracts were negotiated through telephone calls and facsimile transmissions between New York and Texas; Constitution executed the Reinsurance Contracts in New York; and Constitution denied liability on Stonewall's claim pursuant to the Reinsurance Contracts in New York. A substantial part of the events giving rise to this action plainly occurred in New York. *See, e.g., Sacody Technologies, Inc. v. Avant, Incorporated,* 862 F.Supp. 1152, 1157 (S.D.N.Y. 1994) (Leisure, J.) (venue proper in Southern District of New York in diversity action for breach of confidentiality agreement, where parties' "dealings ... in relation to the Confidentiality Agreement took place over the phone and by correspondence and facsimile between [the parties] in Massachusetts and New York, respectively.") (citation omitted). Stonewall's motion to dismiss for improper venue is therefore denied.

## II.  Transfer.

■ Failing a dismissal for improper venue, Stonewall argues that this Court should transfer this action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).[1] Stonewall argues that a transfer is warranted, because this case turns on the question of whether Stonewall settled the Texas Action, at least in part, out of a concern that it would be held liable pursuant to the Underlying Policy, and the sources of evidence relevant to this question are located in Texas or Alabama. Constitution responds that this case does not turn solely on Stonewall's reasons for entering into the Settlement. Rather, Constitution argues, another important question in the case is whether the Reinsurance Contracts obligate Constitution to pay a claim that arises out of a settlement of claims against Stonewall that were not made pursuant to the Underlying Policy. Important sources of evidence relevant to this question are located in New York, Constitution contends.

Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought.

28 U.S.C. § 1404(a). "[M]otions for transfer lie within the sound discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equipment Corp.,* 980 F.2d 110, 117 (2d Cir.1992) (citation omitted). The factors that guide the district court's discretion in determining whether to transfer a case pursuant to § 1404(a) are:

> (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

---

1. There is no dispute that this action properly could have been brought in the Northern District of Texas in the first instance.

*Miller v. Bombardier Inc.*, 1993 WL 378585, *2 (S.D.N.Y. Sept. 23, 1993) (Leisure, J.). "The burden of demonstrating the desirability of transfer lies with the moving party." *Fashion-in-Prints, Inc. v. General Textile Printing & Processing Corp.*, 1994 WL 48833, *1 (S.D.N.Y. February 14, 1994) (Leisure, J.). The Court finds that Stonewall has failed to carry this burden.

■ The Court first considers the convenience of witnesses. Stonewall has specifically identified five persons (all third parties) from Texas who may provide testimony concerning Stonewall's reasons for entering into the Settlement.[2] These witnesses would obviously find it more convenient to testify in the Northern District of Texas than in the Southern District of New York. Constitution has specifically identified only one person (a Constitution employee) from New York who may offer testimony relevant to the scope of the Reinsurance Contracts' coverage.[3] As a result, the convenience-of-witnesses factor counsels in favor of transfer.

The second consideration is the location of relevant documents and relative ease of access to sources of proof. Stonewall argues that this factor favors transfer because originals of relevant documents and court records concerning the Texas Action are located in Texas. But

> [a]ccess to documents and other proof is not a persuasive factor in favor of transfer without proof that documents are particularly bulky or difficult to transport, or

proof that it is somehow a greater imposition for defendant to bring its evidence to New York than for plaintiff to bring its evidence to [the moving party's proposed forum].

*Sunshine Cellular v. Vanguard Cellular Systems, Inc.*, 810 F.Supp. 486 (S.D.N.Y.1992) (Carter, J.) (citing *Stinnes Interoil, Inc. v. Apex Oil Co.*, 604 F.Supp. 978, 983 (S.D.N.Y. 1985) (Leisure, J.)). Stonewall has not explained why copies of the original documents and records to which it refers will not suffice for purposes of this litigation. Nor has Stonewall even endeavored to show that the relevant documents and records in Texas are voluminous, or that copying and shipping them to New York would otherwise impose an inordinate or unfair burden on Stonewall. Moreover, Constitution has argued, and Stonewall has not disputed, that many documents relevant to determining the scope of the Reinsurance Contracts' coverage are located in New York. As a result, the Court finds that this factor does not weigh in favor of transfer.

The third factor to be considered is the convenience of the parties. Stonewall argues without explanation that this factor "is neutral as applied to the present action." Stonewall's Memorandum of Law in Support at 13. The Court disagrees. Stonewall is an Alabama corporation, with its principal place of business in Birmingham, Alabama. It is far from obvious to the Court why Stonewall would not find it about as (in)convenient to litigate this action in the Southern District of

---

**2.** Stonewall has identified two of its employees as further witnesses who may provide relevant testimony in this action, but Stonewall did not specify where these employees reside or work, except to say that neither is a citizen of New York. This is insufficient to show that these persons would find it substantially more inconvenient to testify at a trial of this action in New York than in Texas, and Stonewall bears the burden of proof on this issue. The Court therefore does not consider any inconvenience that these potential witnesses may incur at a trial in this District as weighing in favor of transfer.

**3.** As described above, Constitution has argued that this case turns on the question of whether the Reinsurance Contracts obligate Constitution to pay a claim that arises out of a settlement of claims against Stonewall that were not filed pursuant to the Underlying Policy. Stonewall responded that "what may have been said regard-

ing [the Reinsurance Contracts] arguably formed in New York [is] ... largely immaterial to this lawsuit." Stonewall Reply at 2–3. But this is not a concession of Constitution's position with respect to the scope of the Reinsurance Contracts' coverage. Indeed, Stonewall's response refers to the "contractual interpretation issue raised by this lawsuit." *id.* at 2. The Court expresses no view on the scope of the Reinsurance Contracts' coverage, or on whether there is a genuine issue of material fact as to that scope, because these matters are not currently before the Court. But Stonewall's failure to concede Constitution's position with respect to the scope of the Reinsurance Contracts' coverage precludes the Court from concluding, for purposes of this transfer motion, that this action turns solely on Stonewall's reasons for entering into the Settlement.

New York as in the Northern District of Texas. In contrast, it is obvious to the Court that Constitution, a New York corporation with its principal place of business in New York, New York, would find it more convenient to litigate this action in New York than in Texas. As a result, the convenience of the parties weighs against transfer.

The fourth consideration is the locus of operative facts. Stonewall has argued that the only operative facts that may be said to have occurred in New York are Constitution's entry into the Reinsurance Contracts and denial of liability thereunder. Stonewall further argues that the other operative facts of this case—principally Stonewall's entry into the Underlying Policy, and the Texas Action and the Settlement—occurred in Texas. Stonewall acknowledges, however, that the ultimate decision to settle the Texas Action was made "in conjunction with [Stonewall's] home office" in Birmingham, Alabama. Stonewall's Reply Memorandum of Law at 3. Moreover, the scope of the Reinsurance Contracts' coverage may be in issue, see supra note 3, and the negotiation of the Reinsurance Contracts occurred, at least in part, in New York. As a result, although important aspects of the background of this case are set in Texas, other significant aspects are set in Alabama and New York. The Court cannot say without significant qualification that the locus of operative facts is Texas. The Court therefore concludes that this factor weighs only modestly, at most, in favor of transfer.

The fifth factor is the weight accorded to the plaintiff's choice of forum. Stonewall correctly argues that, although plaintiff's choice of forum generally is entitled to great weight, it may be accorded less weight in cases where the chosen forum has no relationship to the locus of operative facts. The

problem with Stonewall's argument in this case, however, is that Constitution's chosen forum does have a significant relationship to this action, because Constitution negotiated and entered into the Reinsurance Contracts in New York. The Court therefore accords Constitution's choice of forum substantial weight.

The sixth consideration is the availability of process to compel attendance of unwilling witnesses. Stonewall argues that this factor weighs heavily in favor of transfer because the five third-party witnesses whom Stonewall has identified as sources of evidence helpful to its case are beyond this Court's subpoena power, but are within the subpoena power of the United States District Court for Northern District of Texas. However, Stonewall failed to adduce any evidence that any of these persons is actually *unwilling* to testify on Stonewall's behalf at a trial of this action in New York. Moreover, as described by Stonewall, the scope of four of these five persons' proffered testimony is identical one to another.[4] Under the circumstances, this factor weighs only modestly in favor of transfer. *See First National City Bank v. Nanz, Inc.*, 437 F.Supp. 184, 189 (S.D.N.Y.1975); *Fashion–in–Prints, Inc.*, 1994 WL 48833, *2 & n. 2.

The seventh factor is the forum's familiarity with the governing law. Stonewall argues that this factor is not relevant because the Reinsurance Contracts do not contain a choice-of-law clause and it is therefore not clear what state's law will apply.[5] Constitution responds that, under New York's choice-of-law rules, which indisputably control, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–1022, 85 L.Ed. 1477 (1941), New York substantive law

4. The Court does not hereby purport to rule that any of these individuals' testimony would be cumulative and therefore inadmissible at trial. Rather, the Court merely points out that Stonewall, as the moving party, has not adequately explained, for purposes of its transfer motion, how all four of these individuals' testimony would significantly further Stonewall's case at trial.

5. Stonewall also argued, in conclusory fashion, and for the first time in its reply papers, that "it is plain that Texas law played a significant role

in the decision to settle, and a Texas Court will be in a better position to assess this factor." Stonewall Reply Memorandum at 7. This argument is unpersuasive. The question of why Stonewall entered into the Settlement is one of fact, and Stonewall has failed to carry its burden of explaining how this factual inquiry will be informed by a substantive legal analysis that the United States District Court for the Northern District of Texas is significantly more competent to undertake than is this Court.

will apply. The Court declines to resolve the choice-of-law question on the present record. The parties have devoted a total of less than two pages of their briefs to this issue, and the factual circumstances that may ultimately bear on the choice-of-law determination have not necessarily been thoroughly developed. This factor therefore does not provide a reason to transfer this action.

The final, overarching consideration is trial efficiency and the interest of justice. But to the extent that this inquiry encompasses concerns not already discussed, Stonewall has not provided any further reason to transfer this action to the Northern District of Texas. In summary, then, although the convenience of witnesses and, to a lesser extent, the locus of operative facts and availability of process to compel attendance of unwilling witnesses, weigh in favor of transfer, the convenience of the parties and the plaintiff's choice of forum weigh against transfer, and the other considerations are neutral. The Court therefore concludes that Stonewall has not made the requisite "clear-cut showing that transfer is in the best interests of the litigation." *Miller v. Bombardier*, 1993 WL 378585, *2 (S.D.N.Y. Sept. 23, 1993) (quoting *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F.Supp. 1314, 1321 (S.D.N.Y.1989)). As a result, Stonewall's motion to transfer this action to the Northern District of Texas is denied.

### CONCLUSION

Stonewall's motion to dismiss for improper venue or, alternative, to transfer this action to the Northern District of Texas are HEREBY DENIED. The parties to this action are HEREBY ORDERED to appear before this Court on February 17, 1995, at 11:30 AM, for a pre-trial conference in Courtroom 1106, United States Courthouse, 40 Centre Street, New York, New York.

**SO ORDERED.**